936 So.2d 898 (2006)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Ivory E. BRITTON.
No. 2005-JP-01922-SCT.
Supreme Court of Mississippi.
August 24, 2006.
*900 Luther T. Brantley, III, attorney for appellant.
Phillip J. Brookins, John L. Walker, Jr., Jackson, attorneys for appellee.
EN BANC.
COBB, Presiding Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) recommended that Hinds County Justice Court Judge Ivory E. Britton be publicly reprimanded and assessed costs in the sum of $1,118.37 for his actions which the Commission found to constitute willful misconduct in office. The formal complaints out of which this recommendation arose were filed in Commission cases Nos. 2004-023 and 2004-256, respectively. Judge Britton does not deny that his actions were improper, but he asserts that the Commission failed to take into account mitigating evidence. Finding this argument unpersuasive and the recommended sanction insufficient, this Court declines to adopt the Commission's recommendation and orders that Judge Britton be publicly reprimanded, suspended for thirty days without pay, and pay costs.

FACTS
¶ 2. The facts of this case are essentially undisputed. Judge Britton is a Justice Court Judge for Hinds County District Two and has served in that capacity since 1993. The history of his various encounters with the Commission is set forth in the testimony and documents admitted into evidence in the hearing in the present matter.
¶ 3. The first letter of complaint against Judge Britton was received by the Commission on April 21, 1999, and assigned case number 99-005. In his response to the letter, Judge Britton stated that in two landlord-tenant cases before his court, brought by the same plaintiff against two different defendants, he heard conflicting testimony, then took the cases under advisement. He subsequently made three or four attempts to discuss the status of rent subsidy disbursements involved in the cases, with the housing authority. Those attempts being unsuccessful, he reset the cases for further hearing. One of the tenants appeared, the other did not, and the landlord did not appear for either. Judge *901 Britton dismissed one case with prejudice and the other without prejudice. After due consideration, the Commission dismissed the complaint, but sent a letter on April 21, 1999, admonishing Judge Britton that:
Although the Commission found insufficient evidence to proceed with a formal complaint the Commission is concerned with your attempting to get clarification from the Jackson Housing Authority. Please be advised that each case must be decided on the merits presented in open court and should not be subject to information gained by your ex parte sources. Further complaints of conduct of this nature will be seriously considered by the Commission.
(emphasis added). The letter closed with the suggestion that if Judge Britton had any questions concerning the matter, he should contact the Commission's attorney. There is no record of his having made such a contact for further explanation of ex parte communications by a judge.
¶ 4. The second letter of complaint against Judge Britton was filed on November 2, 1999, and the Commission ultimately filed a Formal Complaint with regard to it, in case number 1999-180. In the underlying case in Judge Britton's court, there were criminal charges and counter-charges between a Hinds County deputy sheriff and a defendant named Coleman, who had escaped after the deputy arrested him. After finding the deputy not guilty, Judge Britton pulled all the charges which the deputy had made against Coleman and sent them "to the files" without further action by the court. The complaining letter alleged that the sending of the charges to the files resulted from ex parte communications between Coleman and Judge Britton, but the Commission found no evidence to support that part of the charge. However, the Commission found that the Hinds County Justice Court's practice of pulling all pending cases against a defendant, regardless of which judge was assigned to hear them, gave an appearance of impropriety in the improper shifting of cases and violated a defendant's right to due process. The Commission further found that dismissal of the charges and sending them to the file without any hearing or notice of the dismissal was "improper and another violation of due process." The Commission recommended a private reprimand for the improper handling and dismissal of the charges without a hearing or other proper pleadings. Judge Britton testified in the present case that he "never received any type of recommendation or any type of disposition in it. I was never made aware of it." The Commission did not provide any evidence to the contrary.
¶ 5. The third complaint of misconduct was received on May 10, 2001, and became the Commission's case number 2001-059. It reported that Judge Britton had set aside a judgment entered by Justice Court Judge Herbert and stayed the garnishment filed thereon, after an ex parte contact with a defendant who claimed his wages had been improperly garnished twice. In his response, Judge Britton acknowledged that he heard the defendant's arguments and "merely stayed the execution of garnishment" because he wanted "to truly find out if the defendant was being penalized double." He further attempted to justify his actions by explaining that the case had inadvertently been assigned a file number that indicated it was Judge Britton's case, but it was actually heard by Judge Herbert. When asked if he recalled "being instructed by the Commission. . . that it was improper to set aside and/or alter the judgment of another judge", Judge Britton said that he "recall[ed] some discussion; the particulars, again, I can't recall because of the time frame involved."
*902 ¶ 6. The fourth complaint against Judge Britton, in commission case 2003-321, resulted in a Formal Complaint being filed on March 11, 2004, and arose from a collection case between Cash, Inc. (Cash) and Willie Smith. On October 24, 2002, the day set for trial, Judge Britton was absent and unable to conduct court, so Judge Joseph Lewis heard the case and rendered judgment for Cash, in the sum of $375 plus costs of $54. After Cash had already collected $300 and filed a garnishment for the other $129, Judge Britton, without notice to Cash, entered a stay of the garnishment based on information obtained in ex parte communication with Smith. On January 16, 2003, the trial date re-set by Judge Britton, he informed Cash that he was altering the prior judgment and rescinding the statutory penalties, so Smith actually owed only $354 total, and Cash must refund any excess funds already collected. At the June 8, 2004, hearing before the Commission, Judge Britton testified that he did not realize these actions in the Cash/Smith case were inappropriate and that he misunderstood the meaning of ex parte communications. He admitted that he was not permitted to engage in ex parte conversations, but he had only a vague understanding of what that meant. He also admitted that this was his common practice and that he thought nothing was wrong with doing so. Further, he testified that he did not understand that it was improper for him to set aside a final judgment, entered by another judge, without following applicable procedures. After this hearing, Judge Britton and the Commission entered into a Memorandum of Understanding (MOU) in which he admitted that his conduct was inappropriate and that he had now learned the meaning of ex parte communication. He also promised to no longer engage in such activities and to comply with proper procedural requirements to set aside a final judgment. The Commission resolved this Formal Complaint by private admonishment through the Memorandum of Understanding.[1]
¶ 7. The fifth complaint against Judge Britton resulted in the Commission filing a Formal Complaint, number 2004-023, on October 12, 2004. This complaint stated that in July, 2003, Judge Britton was assigned a case in which Vintage Apartments filed suit against Larry Hubbard. On August 8, 2003, the date set for trial, Hubbard was not present in court; and Judge Britton entered a default judgment against him. A week later Hubbard came to the court and spoke with Judge Britton ex parte, to explain that he was not present on the day of trial because he had gone to the wrong courtroom. Because of this ex parte conversation, Judge Britton, without notice to Vintage Apartments and without a hearing, set aside the default judgment and rescheduled the matter for trial. Both parties were present for the second trial, and Judge Britton took the matter under advisement, pending an on-site inspection of Hubbard's apartment which was the subject matter of the dispute. Five weeks later, when Judge Britton arrived at Hubbard's apartment for the on-site inspection, he performed the inspection with a representative from the apartment complex without Hubbard present. After the inspection and an ex parte conversation with representatives of Vintage Apartments, Judge Britton determined that Hubbard had been untruthful in his accusations against Vintage Apartments and subsequently rendered judgment against him.
¶ 8. The sixth complaint filed was against Judge Britton on January 13, 2005, *903 in Commission case 2004-256. It arose from a case in which Joseph King, Jr., d/b/a Greenleaf Maintenance filed suit against Vintage Apartments, and it has many similarities with complaints four and five. On July 25, 2002, the date set for trial, Judge Britton was absent, and the case was reassigned to Judge Joe Lewis. King failed to appear, and Judge Lewis dismissed the case with prejudice. King later approached Judge Britton to explain his absence, and after this ex parte conversation Judge Britton rescheduled the trial for a new date. At trial, in which both parties appeared, Judge Britton awarded King $2,000 plus court costs. Vintage Apartments subsequently filed a complaint with the Commission.
¶ 9. Presently before this Court is the Commission's recommendation regarding these last two Formal Complaints.

ANALYSIS
¶ 10. The appropriate standard of review for a judicial disciplinary action is derived from Rule 10(E) of the Rules of the Mississippi Commission on Judicial Performance:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
In judicial discipline actions, this Court is the trier of fact and alone possesses the power to impose sanctions. Miss. Comm'n on Judicial Performance v. Carr, 786 So.2d 1055, 1058 (Miss.2001). Although this Court is not bound by the Commission's findings, they are given great deference when based on clear and convincing evidence of misconduct. Miss. Comm'n on Judicial Performance v. Underwood, 644 So.2d 458, 460 (Miss.1994).
¶ 11. This Court may sanction a judge, pursuant to Article 6, § 177A of the Mississippi Constitution of 1890, for actions which constitute "willful misconduct in office or conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute." Carr, 786 So.2d at 1058. Willful misconduct involves more than an error of judgment or a mere lack of diligence. Id. However, negligence or ignorance not amounting to bad faith may also bring the judicial office into disrepute and be prejudicial to the administration of justice. Miss. Comm'n on Judicial Performance v. Peyton, 812 So.2d 204, 207 (Miss.2002). The Commission asserts that Judge Britton committed willful misconduct in office by violating Canons 1, 2 A, 3 B(2), 3 B(7), 3 B(8), and 3 C(1)[2] of the Code of Judicial Conduct of *904 Mississippi, by engaging in ex parte conversations with litigants.
¶ 12. Further, the Commission asserts that Britton committed willful misconduct when he failed to comply with Miss.Code Ann. section 9-11-33 by setting aside assigned final judgments and interfering with and setting aside the order handed down by Judge Lewis.
¶ 13. Judge Britton does not assert that his actions were appropriate under the Code of Judicial Conduct; only that he was not aware that they were inappropriate. Judge Britton admits in his brief and in the MOU prepared by the Commission following the earlier Cash, Inc./ Smith complaint that his actions violated the Code of Judicial Conduct. However, Judge Britton argues that it was his understanding that the MOU covered all similar prior conduct and not just that one occurrence.
¶ 14. The Commission reached its decision on a split vote. One panel member determined that the Commission was bound by the MOU entered into in 2003-231 and "the Commission could not publicly recommend [sic] Judge Britton for essentially identical conduct which occurred prior to the Memorandum of Understanding". Another panel member "was of the opinion that a judge of Judge Britton's education and experience knew better or should have known better; and therefore a public reprimand is warranted." The third panel member concluded that if the last three complaints had all been heard simultaneously, they "would warrant a public reprimand."
¶ 15. We disagree with the panel member's conclusions for the reasons which follow. Judge Britton's actions clearly violate the Code of Judicial Conduct, and he does not challenge that finding. A claim of ignorance of the duties of the office of judge, as a defense to judicial misconduct, is tantamount to an admission by the accused judge that he does not possess the qualifications necessary to be a judge. In re Collins, 524 So.2d 553, 557 (Miss.1987). Ignorance of the law is even less of an excuse for a judge than a private citizen. In re Bailey, 541 So.2d 1036, 1037 (Miss.1989). The Mississippi Constitution does not require justice court judges to be lawyers, rather only requires a high school or a general equivalency diploma. This undoubtedly places a justice court judge at a disadvantage. Id. at 1039. However, by assuming the office of justice court judge, *905 the judge accepts the responsibility of becoming learned in the law. Id.
When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial and competent application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges.
Id. We have insisted before, and more strongly we insist again today, that our justice court judges be nothing less than just that  judges.
¶ 16. This Court has found that this requirement is even more important with regard to justice court judges, because most citizens have their primary and possibly only direct contact with the law through the office of the justice court judge. Id.
The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process.
Id. We conclude that Judge Britton not only was negligent by virtue of his claimed ignorance of the law, but he also engaged in willful misconduct, thus implicating § 177A of the Mississippi Constitution of 1890. He ignored statutory law (see section 9-11-33, supra) as well as the Uniform Rules of Procedure for Justice Court 2.06.[3] But the most crucial of all is his ignoring the Code of Judicial Conduct, which is the bedrock of our judicial system and sets forth the fundamental principles which govern all judges.
¶ 17. Judge Britton draws this Court's attention to the recent decision in Miss. Comm'n on Judicial Performance v. Martin, 921 So.2d 1258, 1268 (Miss.2005), for support of his position that a simple mistake, such as his, does not warrant a finding of misconduct. However, Martin is clearly distinguishable from the present case, because in Martin the judge identified not only two statutes, but also the Uniform Rules of Procedure for Justice Courts,[4] which led her to the conclusion that she could deny bail. There is a huge difference between error made in the rather complex legal analysis necessary to reconcile these statutes and rule with the constitutional provision which permits only circuit and county court judges to deny bail to a criminal defendant, and the failure to learn even the basic requirements of the Code of Judicial Conduct and your own court's rules. Further, Judge Martin testified without contradiction that the specific topic which she misunderstood was never covered at any of the judicial seminars *906 or training sessions she attended. Id. Just the opposite occurred in the present case.
¶ 18. Judge Britton did not base his defense on the fact that he misread relevant statutes or controlling precedent or that it was a subject not covered in his training. To the contrary, he freely admitted that ex parte conversations were a topic covered at several judicial conferences he attended and that he was provided reading materials at these conferences which he did not read. Further, he admitted that he had not fully read relevant precedent from this Court. His judicial errors were not based on faulty analysis and misjudgment but rather on basic ignorance of the law. In Martin this Court distinguished between ignorance and simple mistake in the face of reasonable efforts to base decisions on controlling law. Id. at 1268. The Court found the latter not sanctionable while the former was. Id. (an unsupported claim of ignorance will not insulate a judge from sanctions). Therefore, while this Court agrees with the Commission's determination that Judge Britton's actions constituted judicial misconduct, we disagree with the leniency of the recommended sanctions.
¶ 19. The sanctions available to this Court in judicial misconduct cases include, but are not limited to, the power to remove a judge from office, suspend a judge from duty, levy a fine and require a public reprimand. Carr, 786 So.2d at 1059. The guiding factor in assigning an appropriate sanction is that it fits the offense, and this is best measured by comparison with sanctions handed down in prior cases for the listed offense. In re Bailey, 541 So.2d at 1039. This Court has crafted a six-part test to determine the appropriateness of a sanction and will balance the following factors: (1) the length and character of the judge's public service; (2) whether there is any prior case law on point; (3) the magnitude of the offense and harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
¶ 20. Applying this above test, we find that a public reprimand, suspension for thirty days with out pay, and payment of costs are appropriate. Judge Britton has served as a justice court judge for over a decade. Although it is laudable that he has been active in local philanthropic and community service activities, this is little help in mitigating the requirement of minimum sufficiency in knowing basic principles of law such as those which Judge Britton has failed to grasp. There is no evidence in the record of the harm done by Judge Britton's ignorance of the law, other than the monetary loss to those litigants who did not receive a proper trial in compliance with the law. But an immeasurable harm occurs when a judge who is trusted as the gatekeeper to justice for all our citizens, fails to learn and apply fundamental tenets of the law. Further, the judicial activities that gave rise to the present action fall within the ambit of moral turpitude, which includes, but is not limited to, actions which involve interference with the administration of justice. Id.
¶ 21. Ignorance of the law is a serious offense and something this Court does not take lightly. Further, Judge Britton's actions in setting aside his own and Judge Lewis's final judgments, based on ex parte conversations without proper procedure, are serious offenses. The sanctity of a final judgment should not have been taken as lightly as Judge Britton took it. The same is true with regard to the respect due the *907 decisions of other judges. His actions deprived litigants of due process of law. The gravity of that offense cannot be underestimated. His repeated commission of the same offense certainly establishes a pattern of misconduct. Prior cases have found a public reprimand, a thirty day suspension without pay, and assessment of costs appropriate in like situations. See Miss. Comm'n on Judicial Performance v. McPhail, 874 So.2d 441, 444-45 (Miss. 2004); Miss. Comm'n on Judicial Performance v. Perdue, 853 So.2d 85, 98 (Miss.2003); Peyton, 812 So.2d at 207; Miss. Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 854-55 (Miss.1992).
¶ 22. Judge Britton has been before the Commission a total of six times and received thus far: two private admonishments, one of which was via the MOU; the recommendation of a private reprimand; and an undocumented finding of improper conduct based on the judge's admitted conduct, but no evidence presented as to the sanction; and the recommendation from the Commission for a public reprimand in both the present cases. From the first complaint in 1999, through the latest complaint in 2005, Judge Britton continued to involve himself in ex parte communications. Each time this issue arose, he claimed that the circumstances were different and he was not aware that what he did was a violation of the prohibition against ex parte communications. While it is commendable that Judge Britton admitted his errors, that admission does not mitigate against violations of the Code of Judicial Conduct.
¶ 23. The MOU applied only to the complaint before the Commission and not to the other infractions, as shown by the plain language of the document itself. It is unfortunate that, as the Commission attorney acknowledged in his closing statement, the Commission did not look at Judge Britton's history closely enough before they presented the MOU. "Obviously, had we been aware  fully aware and had fully investigated the prior  the complaints which give rise to this particular complaint, we would not have entered into that  would not have recommended that." Such oversight does not, however, prohibit us from considering all of them.
¶ 24. After due consideration of the complete record before us on de novo review, including the six Baker/Gibson factors set forth above, we conclude the sanction recommended by the Commission is inappropriately lenient. We are compelled to hold that Judge Britton should be publicly reprimanded, suspended for thirty days without pay, and assessed all costs.

CONCLUSION
¶ 25. Hinds County Justice Court Judge Ivory E. Britton's actions constituted willful misconduct prejudicial to the administration of justice, sanctionable under Article 6, § 177A of the Mississippi Constitution of 1890. He shall be publicly reprimanded in open court by the senior judge of the Hinds County Circuit Court on the first day of the next term of that court after this decision becomes final. He is suspended for thirty days without pay from and after the date of the issuance of the mandate in this case, and he is assessed the costs of this proceeding in the sum of $1,118.37.
¶ 26. HINDS COUNTY JUSTICE COURT JUDGE IVORY E. BRITTON SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE SENIOR JUDGE OF THE HINDS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL; IS SUSPENDED WITHOUT PAY FOR THIRTY (30) DAYS FROM AND AFTER THE DATE *908 OF ISSUANCE OF THE MANDATE IN THIS CASE; AND IS ASSESSED COSTS IN THE AMOUNT OF $ 1,118.37.
SMITH, C.J., AND CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., EASLEY, CARLSON AND DICKINSON, JJ. COBB, P. J., JOINS IN PART. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.
RANDOLPH, Justice, specially concurring:
¶ 27. I concur in the majority opinion and its judgment. I write separately to address why punishment beyond that recommended by the Mississippi Commission on Judicial Performance is warranted here.
¶ 28. As the administration of justice is the raison d'etre for judges, it should be a dominant consideration in the punishment meted out. Should this Court acquiesce to the Commission's recommended punishment, it would only serve to encourage the Commission to continue recommending sanctions which fail to correspond to the severity of the offense(s). This Court is to give great deference to the findings of the Commission. However, this Court is also "obligated to conduct an independent inquiry." Miss. Comm'n on Judicial Performance v. Lewis, 913 So.2d 266, 270 (Miss.2005) (citations omitted). An independent inquiry comparing Judge Britton's misconduct to his punishment reveals that both the private reprimand sought by Judge Britton, and the public reprimand recommended by the Commission are exceedingly lenient. The punishment recommended by the Commission fails to adequately serve the public's interest and can only cause further erosion of the public's confidence in the judiciary.
¶ 29. I am gravely concerned by Judge Britton's cavalier attitude to being learned in the law, as addressed in paragraph 18 of the majority opinion. Judge Britton's intentional failure to undertake the responsibility of becoming learned in the law is alarming, and for this he must be held accountable.
¶ 30. Judge Britton had ample opportunity to become learned in the law, yet he freely admitted he chose not to.[5] Judge *909 Britton stated he was provided with the tools necessary to improve his competency in the law, yet he took it upon himself not to read them. Such conduct is unacceptable for the office and clearly falls within the purview of wilful misconduct as addressed in § 177A of the Mississippi Constitution. The commission of Judge Britton's series of offenses evinces a pattern of misconduct in defiance of the Uniform Rules of Justice Court Procedure, his oath of office, and of the Code of Judicial Conduct.
¶ 31. All judges are held to the same standard and are bound by the Code of Judicial Conduct. When persons accept the responsibility of becoming a judge, they are bound by the Code of Judicial Conduct, which is relatively simple to read and provides a clear commentary on the rules of conduct for judges. Had Judge Britton obliged himself to read Rule 1.05 of the Uniform Rules of Procedure for Justice Court, Judge Britton would have clearly understood he was not to engage in ex-parte communications.
¶ 32. By stating that he did not read the pertinent materials provided him, Judge Britton has admitted to slovenly conduct. The Preamble to the Mississippi Code of Judicial Conduct states, "Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law." (Emphasis added). Not accepting the responsibility of being learned in the law and committing numerous offenses are affronts to the public Judge Britton is charged with serving and evince a blatant disregard for the justice system. Our duty is to reinforce the public's confidence in the judiciary and to see that the dignity and integrity of the office are not impugned. See Miss. Comm'n on Judicial Performance v. Brown, 918 So.2d 1247, 1252 (Miss.2005).
¶ 33. The sanctions recommended by the Commission were not commensurate with Judge Britton's misconduct. We cannot ignore Judge Britton's blatant disregard for his responsibility as a judge and for the number of citizens adversely affected by his misconduct. Hopefully, Judge Britton will use the thirty-day suspension to familiarize himself with the law and the Code of Judicial Conduct to prepare himself to serve the people who elected him.
SMITH, C.J., EASLEY, CARLSON AND DICKINSON, JJ., JOIN THIS OPINION. COBB, P.J., JOINS THIS OPINION IN PART.
GRAVES, Justice, concurring in part and dissenting in part:
¶ 34. I concur that Judge Ivory E. Britton's actions constitute judicial misconduct which warrant discipline. However, because the majority's decision to suspend Judge Britton for thirty days without pay and to publicly reprimand him contradicts prior decisions of this Court and is not supported by the record in this matter, I respectfully dissent as to the appropriate sanction.
¶ 35. The majority acknowledges that the facts in this case are undisputed. *910 Judge Britton admitted that he did not realize his actions were inappropriate, that he did not know his particular actions fell within the meaning of ex parte communication and that he did not understand that it was improper for him to set aside a final judgment without following appropriate procedures.
¶ 36. The majority engages in shoddy construction at best in an attempt to build a case for suspension and public reprimand by relying on complaints that not only are not at issue here, but were dismissed or resolved by the Commission. The majority finds that the Commission's failure to consider these other matters "does not, however, prohibit us from considering all of them." However, fairness and justice prohibit consideration of these matters.
¶ 37. In the discussion regarding the first letter of complaint, 99-005, the majority quotes language from a letter "admonishing" Judge Britton, but neglects to include the first sentence of the letter that "[t]he Mississippi Commission on Judicial Performance has completed its consideration of the above complaint and the complaint has been dismissed." The Commission made no finding of misconduct. By letter, the Commission informed Judge Britton that the matter had been dismissed and made a cautionary statement as to ex parte communication. However, Judge Britton testified that he did not recall ever receiving such a letter. Because complaint 99-005 was dismissed for insufficient evidence, this matter should not be considered.
¶ 38. The second letter of complaint, 1999-180, pertained to a criminal matter that involved neither ex parte communication nor the setting aside of a judgment. With regard to this complaint, which has virtually no relevance to the case sub judice, the Commission recommended a private reprimand for the improper handling and dismissal of charges in Hinds County Justice Court. However, as the majority acknowledges, the Commission did not contradict Judge Britton's testimony that he was never made aware of any recommendation or disposition. Further, there was additional testimony establishing that the actions complained of had been standard procedure in the court. Hence, this matter should also not be considered.
¶ 39. With regard to the third complaint, 2001-059, the majority fails to establish any type of disposition other than quoting a portion of testimony wherein Judge Britton was asked whether he remembered being instructed by the Commission that it was improper to set aside and/or alter the judgment of another judge. This matter should not be considered.
¶ 40. Although not the subject of this case, the fourth complaint, 2003-321, warrants a combined discussion with complaints five (2004-23)[6] and six (2004-256), as all three deal with similar conduct over a period of time from approximately the summer of 2002 until the summer of 2003. Complaints five and six were subsequently consolidated and are at issue in this case. However, the actions in the sixth complaint actually occurred prior to those in complaints four and five. Furthermore, the actions in all three cases occurred prior to the filing of the fourth complaint on March 11, 2004, and prior to the entry of the Memorandum of Understanding (MOU) in that matter on June 8, 2004. Additionally, there is no evidence in the record below to support the majority's finding that "[f]rom the first complaint in 1999, through the latest complaint in 2005, *911 Judge Britton continued to involve himself in ex parte communications." There is no evidence before us that Judge Britton has engaged in any ex parte communications since the entry of the MOU on June 8, 2004, or even since the 2003 misconduct occurring in the case sub judice. It is abundantly clear that both the majority opinion and the concurring opinion are replete with inaccurate statements, irrelevant matters and irresponsible conclusions.
¶ 41. The majority refers to Judge Britton's argument that the MOU precludes consideration of the two complaints in this case as a "fallacy." I disagree. The majority acknowledges that even the Commission panel was split on this issue. As set out herein, all of the misconduct in the case sub judice occurred prior to the entry of the MOU. All of the misconduct occurred prior to the filing of the complaint in the case resolved by the MOU. The MOU states:
The Respondent now understands that a judge cannot change the rulings of another judge to which a case has been assigned, that he cannot engage in ex parte communication with a litigant, and that he cannot alter a judgment without a written request from the movant, a subsequent hearing and notice to all parties. The respondent did not intentionally engage in misconduct and would not have acted as he did if he had known the legality of his actions was questionable.
Memorandum of Understanding, 2003-321 at 4 (June 8, 2004) (emphasis added).
¶ 42. Clearly, the MOU states that Judge Britton did not intentionally engage in misconduct and that he did not fully understand the questionable legality of his actions. These matters were explained to Judge Britton, and he agreed that "similar conduct will not recur in the future." The Commission agreed that the matter should be "resolved by private admonishment." For the majority to conclude that Judge Britton should have known better or that he had some additional duty in a case which arose prior to the MOU is absurd. As one court has stated:
It would be nonsensical, not to mention grossly unfair, for a judge to be repeatedly subject to discipline for the same previously charged and disciplined conduct each time a new complaint is filed against him. The existence of a previous charge and the discipline imposed are relevant, however, to the Commission when determining the proper discipline to be recommended and to this court when determining the proper discipline.
In re Quirk, 705 So.2d 172, 188-89 (La. 1997). While Quirk refers to specific acts previously charged and addressed via agreement, the same argument holds true with other acts of the same conduct occurring prior to acts charged and resolved pursuant to an agreement, i.e., the MOU.
¶ 43. The majority's statement that Judge Britton has received prior discipline in the form of "two private admonishments, one of which was via the MOU; the recommendation of a private reprimand; and an undocumented finding of improper conduct based on the judge's admitted conduct, but no evidence presented as to the sanction" is not accurate. The argument regarding prior conduct contained in the Brief of the Commission never raised the first two "complaints" relied on by the majority. Instead, the Commission argued that Judge Britton "has been privately reprimanded twice previously as a result of two Formal Complaints lodged against him by the Commission for acts of judicial misconduct." The Commission further asserts that these two private reprimands were in the cases of the second complaint, 1999-180, which was the criminal matter *912 that did not deal with either of the actions here and where Judge Britton testified he never received any recommendation or disposition, and 2003-321, the fourth complaint regarding similar actions occurring during the same time period as those in the case sub judice and resolved by the MOU.
¶ 44. The majority cites a previous case for the proposition that, "[i]gnorance of the law is a serious offense and something this Court does not take lightly." Apparently that statement applies to all judges save one, Judge Judy Martin. The majority maintains that Miss. Comm'n on Judicial Performance v. Martin, 921 So.2d 1258 (Miss.2005), is distinguishable because Judge Martin identified various statutes that led to her confusion and subsequent failure to abide by constitutional requirements in denying bail to a criminal defendant and because this topic was never covered at any of the judicial seminars she attended. I disagree. It is the height of hypocrisy when this Court declares in the instant case that it does not take ignorance of the law lightly, yet in Martin this Court found dismissal of the complaint against Judge Martin was an appropriate outcome.
¶ 45. Judge Britton admitted that the topic of ex parte communication was covered at several judicial seminars that he had attended, but that he did not realize his actions fell within the meaning of ex parte communication. Judge Britton believed he knew the applicable law based on what had been presented to him at the various seminars. He was wrong. For that, the majority holds that he should be suspended and that he should receive a public reprimand.
¶ 46. On the other hand, Judge Martin knew there were multiple statutes dealing with bail, was confused as to the exact law, was not familiar with the applicable provision, yet made the decision to deny bail to a defendant on two separate occasions. Martin, 921 So.2d 1258. Judge Martin testified that she was not familiar with the applicable section of the Mississippi Constitution as to the setting of bail and when it could be denied. She also testified that she did not follow appropriate procedures by initiating contempt proceedings against the defendant for violating the conditions of his bond or release or by setting a bond revocation hearing. The Commission argued that testimony was offered during its hearing establishing that Judge Martin had also refused bond to misdemeanor defendants on other occasions and that Judge Martin had previously received a private reprimand for two incidents involving the threat of criminal prosecution in an effort to resolve civil indebtedness. This Court found that Judge Martin had not committed judicial misconduct and dismissed the complaint against her with prejudice. The majority now defends Judge Martin's actions with the newly discovered explanation that her conduct involved the need for a "complex legal analysis" in deciding routine bail matters. See Martin, 921 So.2d 1258.[7]
¶ 47. Judge Britton was presented with the applicable law via judicial seminars and mistakenly believed he understood it without further research. Judge Martin knew that the topic was not covered at any seminars, researched the topic, became confused, failed to find the relevant provision, but believed she understood it without further research. The majority finds Judge Martin's actions to be a "simple mistake in the face of reasonable efforts to base decisions on controlling law." Yet the majority finds Judge Britton's actions *913 to be "judicial incompetence" that are "not based on faulty analysis and misjudgment but rather on basic ignorance of the law." While there may be a slight difference in circumstances, it is insufficient to justify such disparate treatment.
¶ 48. The majority further finds that Judge Britton "freely admitted that ex parte conversations were a topic covered at several judicial conferences he attended and that he was provided reading materials at these conferences which he did not read." That finding is not supported by the record in this matter. The following exchange occurred during the hearing on this matter:
Q. When you go to the seminars, are there handouts that will give you copies of cases or decisions by the Supreme Court regarding judicial discipline that's occurred during that year?
A. Yes, ma'am.
Q. Do you read those cases?
A. Yes, ma'am.
Q. Are you familiar with the Commission v. E.A.J. Payton?

A. To some degree but I  in its entirety and for certain every single aspect of it I'm not.
Clearly Judge Britton testified that he reads the materials and was just unable to recall every single aspect of a particular case.
¶ 49. The majority further finds that Judge Britton's activities "fall within the ambit of moral turpitude." In support of this finding, the majority cites Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). There is no such holding in Gibson, which involved a municipal court judge who set aside judgments of another judge without notice or hearing. Gibson, in which this Court held that "there was no moral turpitude involved in the offense" of setting aside judgments of other judges, merely contains a footnote regarding moral turpitude. Id. Simply put, the majority incorrectly relies on Gibson in support of a proposition for which Gibson does not stand. The opinion that such activities are immoral is unprecedented, unbelievable and unjust. In fact, the Commission, in its brief, conceded that Judge Britton's "conduct did not amount to an act of moral turpitude." Ironically, in the case of Judge Martin, the Commission's position was that her actions constituted moral turpitude. Despite all of that, this Court dismissed the complaint against her.
¶ 50. In Martin, this Court opined that "there is no corollary that an honest error equates to a violation of the integrity and independence of the judiciary" and assumed that "Judge Martin legitimately believed she had the authority to deny bail. . . ." In the case of Judge Britton, nobody questions that he believed he had the right to engage in communication with the litigants. There is no difference in the conduct, and there is no justifiable reason for the difference in sanctions.
¶ 51. Moreover, the standard established in Miss. Comm'n on Judicial Performance v. Justice Court Judge T.T., 922 So.2d 781, 786 (Miss.2006)[8], mandates that Judge Britton's actions warrant a punishment less than suspension and public reprimand. In Judge T.T., a justice court judge accepted a plea agreement not in *914 compliance with the mandatory sentencing as required by the relevant statute. The judge accepted the agreement based on the prosecutor's recommendation and failed to research the applicable statute. To borrow language from Justice Randolph's concurring opinion in the case sub judice: "Judge [T.T.] had ample opportunity to become learned in the law," but freely admitted choosing not to do so. Additionally, two previous complaints had been filed against Judge T.T. for judicial misconduct; one resulting in private reprimand and one being dismissed by this Court. Id. at 786.
¶ 52. In applying the Baker factors, this Court made findings in Judge T.T. that are similar in weight to the Baker findings in this case. Id. at 786-87. This Court found Judge T.T.'s actions to be "just the latest violation in a[sic] emerging pattern of legal errors. . . ." This Court further found Judge T.T. guilty of judicial misconduct, but did not agree with the Commission's recommendation of a public reprimand. Instead, this Court found a private reprimand to be appropriate.
¶ 53. This Court found that Judge T.T. was not guilty of egregious legal error nor bad faith, but that the neglect should be labeled misconduct because of the continuing pattern of legal error and cited In re Quirk, 705 So.2d at 178, for the proposition that mere errors of law or simple abuses of judicial discretion should not amount to judicial misconduct. Judge T.T., 922 So.2d at 785. Moreover, this Court found that the record plainly established that Judge T.T. was in error.
¶ 54. "Thus, it can hardly be argued that Judge T.T. was not somewhat negligent and ignorant of governing statutes." Id. "All judges inevitably make some mistakes during the course and scope of their duties. However, Judge T.T.'s failure to read and be familiar with the applicable statutes in a matter before the court is an inexcusable mistake. Judges are required to research, read, know and apply the pertinent statutes and case law." Id.
¶ 55. The majority distinguishes Martin based on the difference between ignorance and simple mistake of the law. In Judge T.T., this Court found the judge to be ignorant of the law and found a private reprimand to be proper. The credibility of this Court is undermined by the majority's vain attempt to reconcile the decisions in Martin and Judge T.T. and the majority decision in the instant case. The cases are irreconcilable, and this Court should admit as much. To coddle one judge and castigate the other for almost identical conduct is grossly disparate treatment, which the majority makes a futile effort to distinguish, explain and justify. Equity, fairness and justice are not served, but instead are undermined and ignored by the majority's decision in this case. Regrettably, this Court's decision in Martin has no apparent precedential value. The majority's decision gives the appearance that the Martin decision was designed to protect a single judge. Martin is a decision which will require manufactured explanations in order to distinguish it from subsequent cases where this Court decides to impose sanctions more severe than those recommended by the Commission. Because I would find that Judge Britton's actions warrant a private reprimand, I must respectfully concur in part and dissent in part.
NOTES
[1] Judge Britton now argues that this MOU precludes the consideration of the two additional complaints which were heard subsequent to the MOU, and are the subject of the present opinion. Further discussion of the fallacy of that argument follows infra.
[2] Canon 1, in pertinent part:

A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.
Canon 2 A:
(A) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3 B(2):
(2) A judge shall be faithful to the law and maintain professional competence in it.
Canon 3 B(7), in pertinent part:
(7) A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
(a) where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized: provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) Judges may obtain the advice of a disinterested expert on the law applicable to a proceeding before them if the judges give notice to the parties of the person consulted and the substance of the advice, and afford the parties reasonable opportunity to respond. (Emphasis added).
Canon 3 B(8):
(8) A judge shall dispose of all judicial matters promptly, efficiently and fairly.
Canon 3 C(1):
(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.
[3] If the defendant fails to appear on the trial date, and the plaintiff appears, then the court may enter a default judgment as under Rule 2.12. If the plaintiff fails to appear on the trial date, and the defendant appears, the court shall dismiss the case with prejudice. If neither the plaintiff nor the defendant appears on the trial date, the court shall dismiss the case with prejudice. See ¶ 3, supra.
[4] Miss.Code Ann. § 99-5-11 (authorizing justice court judges to require such bail as the judge may require) and Miss.Code Ann. § 9-11-18 (giving justice court judges similar powers as municipal court judges as found in Miss.Code Ann. § 21-23-7, which allows municipal judges to refuse bail). Uniform Justice Court Rule 3.06 allows a judge to set bail using the "judge's own discretion".
[5] Miss.Code Ann. Sect. 9-11-4(1) states,

(1) The Mississippi Judicial College of the University of Mississippi Law Center shall prepare and conduct courses of training for basic and continuing education for justice court judges of this state. The basic course of training shall be known as the "Justice Court Judge Training Course" and shall consist of at least thirty-two (32) hours of training. The continuing education course shall be known as the "Continuing Education Course for Justice Court Judges," and shall consist of at least eighteen (18) hours of training. The content of the basic and continuing education courses and when and where such courses are to be conducted shall be determined by the judicial college. The judicial college shall issue certificates of completion to those justice court judges who complete such courses.
Miss.Code Ann. Sect. 9-11-3 states,
(1) Except as otherwise provided herein, no justice court judge elected for a full term of office commencing on or after January 1, 1992, shall exercise the judicial functions of his office or be eligible to take the oath of office unless he has filed in the office of the chancery clerk a certificate of completion of a course of training and education conducted by the Mississippi Judicial College of the University of Mississippi Law Center within six (6) months of the beginning of the term for which such justice is elected. A justice court judge who has completed the course of training and education and has satisfied his annual continuing education course requirements, and who is then elected for a succeeding term of office subsequent to the initial term for which he completed the training course, shall not be required to repeat the training and education course upon reelection.
(2) In addition to meeting the requirements of subsection (1) of this section, after taking office, each justice court judge shall be required to file annually in the office of the chancery clerk a certificate of completion of a course of continuing education conducted by the Mississippi Judicial College.
[6] It is worth reiterating that in the fifth complaint, 2004-023, Larry Hubbard, who came to the court and spoke to Judge Britton ex parte, did not prevail.
[7] The explanation that the setting of bail required a "complex legal analysis" was not mentioned in the majority opinion by Justice Randolph in Martin.
[8] As stated herein, the Commission recommended that Judge T.T. be publicly reprimanded. However, this Court reduced the punishment to a private reprimand. The majority's decision is rife with irony. The majority's sanction against Judge Britton is identical to the sanction recommended by the Commission in Martin. Yet, this Court dismissed the complaint against Martin and enhanced the Commission's recommended sanctions against Britton.