CHANDLER, Justice,
for the Court:
¶ 1. On November 11, 2008, the Mississippi Commission on Judicial Performance (Commission) filed a formal complaint against Johnny C. Hartzog, Justice Court Judge for District Two, Jefferson Davis County, Mississippi, alleging judicial misconduct which was actionable pursuant to Article 6, Section 177A, Mississippi Constitution of 1890, as amended. While the record reveals no formal answer by Judge Hartzog, it does contain two letters signed by Judge Hartzog relating to this matter and an undated copy of an order of recu-sal.[1] The Committee of the Commission on Judicial Performance had a hearing on the allegations on April 10, 2009. Following the hearing on May 28, 2009, the Committee filed its Findings of Facts, Conclusions of Law and Recommendations. Judge Hartzog objected to these findings. The Commission filed Commission Findings of Fact, Conclusions of Law and Recommendations on June 22, 2009, with this Court. The Commission found that Judge Hartzog’s conduct violated Canons 1, 2, 3, and 4 of the Code of Judicial Conduct. Further, the Commission found that Judge Hartzog’s conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice bringing the judicial office into disrepute pursuant to Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. The Commission recommended that Judge Hartzog receive a public reprimand; suspension from the office of Justice Court Judge, Jefferson Davis County, Post 2, for a period of six months without pay; and assessment of costs of the proceeding in the amount of $1,411.55. This Court adopts the Commission’s recommendation.
FACTS
¶ 2. On April 10, 2009, the Commission conducted a hearing in this judicial-performance matter. Judge Hartzog testified that he was the Justice Court Judge in Jefferson Davis County, District Two, in Prentiss, Mississippi. He was elected in 1981 and was serving his twenty-ninth year as justice court judge. This case involved a tenant-removal action before Judge Hartzog. Carol Oatis filed an affidavit to remove a tenant in Jefferson Davis County. Oatis sought removal of Veronica Moses from Oatis’s land located on Fate Ward Road in Carson, Mississippi. The justice court file contained a notice to vacate the property addressed to Moses. In addition, the file contained a summons for Moses to appear in court on April 10, 2008.
*1191 ¶ 3. According to Judge Hartzog, the following events transpired over a number of court dates. Oatis and Moses appeared in court, and Moses requested a continuance for another party to be present, DiMa Homes. Oatis, Moses, and DiMa Homes had been in litigation concerning construction of the home on the same property at issue in this disciplinary matter. Judge Hartzog granted the continuance. When he granted the continuance, Judge Hart-zog stated that he did not ask the parties any questions. The case was continued a number of times. On June 5, 2008, the case was continued to July 10, 2008, because Judge Hartzog was recovering from surgery. On July 10, 2008, the file indicated that the case was continued to August 7, 2008, because DiMa Homes was not present in court. On August 7, 2008, Oatis and Moses appeared before Judge Hart-zog.[2] During this hearing, Judge Hartzog stated that Oatis said “I just want her out of my house.” Moses mentioned DiMa Homes, and then Oatis stated “I recuse myself from this case.” At this point, Judge Hartzog stated “I recuse myself too from this case. And you can carry it to the next judge.”
¶ 4. Judge Hartzog knew Moses’s father, Henry Johnson. Johnson died in 2001 or 2002 prior to the 2008 eviction case. Both Judge Hartzog and Johnson had served on the deacon board of the same church. In addition, Judge Hartzog knew both litigants, Moses since her birth and Oatis for a long time prior to the eviction action. Judge Hartzog also had a landscaping business and had cleared the property twice at Johnson’s request and had spread gravel on the driveway at Moses’s request. This work was done a minimum of eight years prior to Oatis’s eviction case.
¶ 5. Oatis stated that he owned property in Jefferson Davis County. Moses had dated Oatis’s son and had asked to put a mobile home on Oatis’s property. Oatis told Moses that she could place a mobile home on his property. A few months later, Oatis was informed that a house was being built on his property. When Oatis visited his property, he found a house that was eighty percent complete and a DiMa Homes sign on the land. Litigation ensued in a separate case in the Chancery Court of Jefferson County over that matter. The chancery court ultimately determined that Moses had no interest in the property.
¶ 6. Oatis later filed an affidavit with the justice court to remove Moses from the property. According to Oatis, on April 10, 2008, he told Judge Hartzog that he wanted Moses evicted from his property. At this point, Oatis claimed that Judge Hart-zog had told Oatis that Johnson, Moses’s father, had told Judge Hartzog “this and that.” Further, Judge Hartzog asked Oa-tis how much money he wanted for the property. When Oatis stated “$50,000,” Judge Hartzog stated that the price was “too much.” Oatis stated that he had told Judge Hartzog “[wjell, you have a conflict of interest in this, judge.” The case was continued in order to have DiMa Homes present in court. On July 10, 2008, Oatis stated that he took the “Fifth” because Judge Hartzog kept talking about Oatis selling the property to Moses. When Judge Hartzog told Oatis how he should handle the matter, Oatis told the judge “You have a conflict of interest. You need *1192 to dismiss yourself.” Oatis stated that Judge Hartzog suggested that Oatis should accept $1,200 for the property. It was not until the August 7, 2008, hearing that Oatis knew that Judge Hartzog was no longer presiding over the matter. Exhibits 5, 6, and 7 were a series of documents that Oatis had filed complaining about Judge Hartzog’s conduct. Oatis stated that he thought Judge Hartzog had a conflict of interest because he had cleared the land and because Judge Hart-zog had stated, in court, that Johnson had told Judge Hartzog that he was proud of his daughter (Moses) for having her own place.
¶ 7. Charles McGilberry, Oatis’s brother-in-law, corroborated Oatis’s testimony that at one of the court hearings, Oatis took the “Fifth.” In addition, McGilberry stated that Oatis was there for an eviction matter, while the judge spoke about settling a land deal. When asked whether any numbers were discussed, McGilberry stated that “I thought something like $1200 or something like that.” McGilberry also stated that he had heard Oatis asking Judge Hartzog not to hear the case, that he never had heard Judge Hartzog recuse himself, and that the case was continued in order to bring the company responsible for building the house to court.
¶ 8. Jefferson County Justice Court Clerk Judy Cole testified that she had seen Oatis at the justice court for a civil, eviction case. She stated that, during the April 10, 2008, hearing, Larry Johnson, Moses’s brother, had suggested that Oatis sell the property. Then, Judge Hartzog had asked Oatis how much money he wanted for the property. Cole also stated that Oatis had asked Judge Hartzog to recuse himself when they were discussing Judge Hartzog’s landscaping business. According to Cole, Judge Hartzog had stated, “Well, I can keep my contracting business and my judging separate.” The case was continued because Moses requested that DiMa Homes be present. At the July 10 court hearing, Cole stated that Oatis had pleaded the “Fifth” because he did not want to talk about the house. She also stated that Oatis again had asked Judge Hartzog to recuse himself. Judge Hartzog recused himself after an investigator with the Commission on Judicial Performance spoke with Cole, which was some time after July 10, 2008.
¶ 9. Moses testified that, after the house was completed in 1999, Judge Hartzog had “smoothed it out all the way ‘round the house.’ ” Moses did not recall any discussion about Judge Hartzog recusing himself from the case. However, she stated that Judge Hartzog had asked Oatis what he wanted for the land and whether Oatis would do as he promised. At the next court date, Moses stated that Oatis had pleaded the “Fifth,” and there had been no discussion by Judge Hartzog about the sale of the property. Moses was not aware that Judge Hartzog had recused himself from the case until she attended the next scheduled hearing. On cross-examination, Moses was questioned about Oatis’s statements concerning the home on his property. Oatis recused himself after Moses told the judge about a statement that Oatis had made concerning the house on his property. Moses also admitted that Judge Hartzog had recused himself after Oatis had recused himself from the case. She stated that Judge Hartzog had smoothed out the area around the house in 1999 or 2000, some eight or nine years prior to the eviction case. She also stated that her brother had asked Oatis in court how much money he wanted for the property.
¶ 10. Luther T. Brantley testified concerning prior disciplinary actions taken by the Commission against Judge Hartzog.
*1193 DISCUSSION
¶ 11. The standard of review for this Court in judicial misconduct proceedings is de novo. Miss. Comm’n on Judicial Performance v. Osborne, 16 So.3d 16, 18 (Miss.2009) (Osborne IV); Miss. Comm’n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009); Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008). This Court gives great deference to the Commission’s findings which are based on clear and convincing evidence. Osborne, 16 So.3d at 18. Notwithstanding the great deference given to the Commission’s findings, this Court is bound to exercise an independent inquiry into judicial-conduct matters. Miss. Comm’n on Judicial Performance v. Carr, 990 So.2d 763, 766 (Miss.2008); Miss. Comm’n on Judicial Performance v. Agin, 987 So.2d 418, 419 (Miss.2008); Miss. Comm’n on Judicial Performance v. Hartzog, 904 So.2d 981, 984 (Miss.2004). This Court, in exercising its independent inquiry, is not bound by any findings of the Commission and may impose additional sanctions in a judicial-misconduct proceeding. Osborne TV, 16 So.3d at 19; Miss. Comm’n on Judicial Performance v. Boland, 975 So.2d 882, 888 (Miss.2008) {Boland I).
I. Whether Judge Hartzog’s conduct constitutes willful misconduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution.
¶ 12. In judicial-performance proceedings, this Court determines whether the conduct of the judge constitutes willful misconduct, prejudicial to the administration of justice, which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended. Willful misconduct has been defined by this Court as follows:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 212-213 (Miss. 2006) (quoting Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004)). Actual, willful behavior is of no import. Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000). This Court has held that a judge “through negligence or ignorance not amounting to bad faith, [may] behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute[,]” and the effect of these actions “is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.” In re Anderson, 451 So.2d 232, 234 (Miss.1984).
¶ 13. The Commission determined by clear and convincing evidence that Judge Hartzog had violated Judicial Conduct Canons 1 (integrity and independence of the judiciary), 2A (promotion of public confidence in the integrity and impartiality of the judiciary), 2B (family, social, or other relationships influencing judicial conduct and judgment), 3B(2) (faithfulness and competence in the law), 3B(7) (ex parte communications), 3B(8) (performance of duties impartially and diligent *1194 ly/disposing of judicial matters promptly, efficiently, and fairly), 3C(1) (impartiality and diligence in performing administrative responsibilities), and 4A (minimizing risk of conflict between judicial extrajudicial obligations). In addition, the Commission found that Judge Hartzog’s conduct constituted willful misconduct in office and conduct that was prejudicial to the administration of justice, bringing the judicial office into disrepute.
¶ 14. The Commission determined that when Oatis and Moses had appeared before Judge Hartzog, the judge had an obvious conflict of interest. Judge Hartzog had known Moses all her life; was friends with her father and on the board of deacons at the same church as her father, Johnson; had performed yard work on the property that was at issue in the eviction case; and had spoken with Johnson, prior to Johnson’s death, about the fact that Johnson was proud of Moses for owning her own home. In addition, Judge Hart-zog had tried to negotiate the sale of the property by Oatis to Moses instead of hearing evidence in the eviction matter. Further, Judge Hartzog had commented in court before Oatis and Moses about discussions which had taken place some seven or eight years prior to the eviction action, between Moses’s deceased father and himself concerning the property at issue in the eviction action. When Oatis had requested that Judge Hartzog recuse himself, the judge had claimed that he orally had re-cused himself. However, a written recusal was not entered until sometime between the July 10, 2008, and the August 7, 2008, court dates and after an investigator with the Commission spoke to Cole, the Jefferson Davis County Justice Court Clerk, about the matter. The Commission also found that Judge Hartzog had failed to conduct his extrajudicial activities in a manner that minimized risk of conflict with judicial obligations. Judge Hartzog had performed yard work on the property in question prior to the eviction action at the time that Moses lived on the property. He also had failed to acknowledge that conflicts of interest may arise when yard services customers appear before him and that he may gain knowledge of information relating to a litigant’s case in the process of serving them in a business capacity. The Commission determined that Judge Hartzog had a fundamental lack of understanding of legal principles in connection with the recusal process. Judge Hartzog had stated that “recusal” meant to dismiss a case. The Commission found that Judge Hartzog obviously had no understanding of what constitutes a recusal or an underlying conflict of interest that requires recusal.
¶ 15. This Court finds that Judge Hart-zog’s actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
II. Whether Judge Hartzog should be publicly reprimanded, suspended without pay for a period of six months, and assessed all costs of the proceeding as recommended by the Commission.
¶ 16. The Commission recommended that Judge Hartzog receive a public reprimand, be suspended for a period of six months without pay, and assessed costs in the amount of $1,411.55.
¶ 17. Imposition of sanctions is a duty conferred to the discretion of the Supreme Court. Boland I, 975 So.2d at 883. The Mississippi Constitution provides sanctions that this Court may impose in judicial performance matters. The Mississippi Constitution states:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, *1195 fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const, art. 6, § 177A (1890). However, this Court is mindful that the sanctions imposed must fit the offense. Bo-land I, 975 So.2d at 893. “The primary purpose of judicial sanctions is not punishment of the individual judge but ‘to restore and maintain dignity and honor of the judicial office and to protect the public against future excesses.’” Miss. Comm’n on Judicial Performance v. Osborne, 11 So.3d 107, 116 (Miss.2009) (Osborne III) (quoting Miss. Comm’n on Judicial Performance v. Guest, 717 So.2d 325, 329 (Miss.1998)).
(1) The length and character of the judge’s public service.
¶ 18. Judge Hartzog has held his position for twenty-nine years. No further evidence of Judge Hartzog’s public service is in the record.
(2) Whether there is any prior caselaw on point.
¶ 19. This Court has imposed similar sanctions to those recommended by the Commission in other cases. Here, the Commission recommends a public reprimand, suspension without pay for a period of six months, and costs. In Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), this Court imposed a public reprimand, costs, and a suspension on a justice court judge for repeated violations of the Canons resulting in multiple disciplinary actions against him. Britton, 936 So.2d at 907. In Britton, this Court set out the history of a justice court judge’s alleged ex-parte communications resulting in six complaints against him over a six-year period. Id. at 900-03. As prior disciplinary action had been taken on some of the other allegations in the complaints, this Court’s opinion in Britton concerned only the sanctions for the last two complaints concerning ex-parte communications and setting aside a default judgment and setting aside another judge’s order. Id. at 903.
¶ 20. In Mississippi Commission on Judicial Performance v. Cowart, 936 So.2d 343, 348-51 (Miss.2006), this Court imposed a public reprimand, costs, and a suspension without pay for a number of offenses including acknowledging a conflict of interest. In Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008) (Osborne II), this Court imposed a public reprimand, costs, and a six-month suspension for, among other things, failing to maintain a high standard of conduct, allowing familial or social relationships to influence the judge’s conduct, and lending the prestige of the office to aid members of his family. Osborne II, 977 So.2d at 327. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006), this Court imposed a public reprimand, costs, and suspension for interfering with a driving-under-the-influence charge. Sanford, 941 So.2d at 218. This Court found that Judge Sanford had violated almost the identical canons as Judge Hartzog is accused of violating, including Canons 1, 2A, *1196 2B, 3B(2), 3B(7), and 3B(8).[3] Id. at 213. In addition, in Mississippi Commission on Judicial Performance v. Carr, 990 So.2d 763, 770 (Miss.2008), this Court imposed a public reprimand, suspension without pay for a period of sixty days, a fíne, and costs. Judge Carr was disciplined for engaging in ex-parte communications and using the power of his office to get a citizen to return pieces of fence to a cemetery. Id. at 768-69.
(3)The magnitude of the offense and the harm suffered.
¶ 21. Oatis was affected by Judge Hartzog’s conduct because his eviction action was delayed. Once Judge Hartzog recused himself from the case, another justice court judge heard the case. Ultimately, the case was dismissed without prejudice because the justice court judge determined that the case was not within the justice court’s jurisdiction. Had the case been dismissed in April 2008, Oatis would have been able to seek further relief via other avenues. In addition, Oatis was subjected to pressure to settle the matter by selling the property to Moses. The cause of action was for an eviction, not settlement of a dispute through negotiations and sale of land.
¶ 22. It is reasonable to conclude that the public’s perception of the judiciary, through Judge Hartzog’s actions, was harmed. Judge Hartzog attempted to negotiate a land sale in place of making a decision on a tenant-eviction matter for the same property in question. One litigant requested that Judge Hartzog recuse himself because the judge had related information that the other litigant’s father had told Judge Hartzog. “Official integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary.” Vess, 10 So.3d at 493 (quoting In re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985)).
(4)Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 23. Judge Hartzog has had prior disciplinary actions against him in the past. In Mississippi Commission on Judicial Performance v. Hartzog, 646 So.2d 1319, 1320-21 (Miss.1994), this Court imposed a public reprimand and costs on Judge Hart-zog for falsely notarizing a signature and entering two orders in cases that were not before him. In Mississippi Commission on Judicial Performance v. Hartzog, 822 So.2d 941 (Miss.2002), this Court imposed a suspension on Judge Hartzog while criminal charges relating to writing bad checks were pending against him. In the companion case, Mississippi Commission on Judicial Performance v. Hartzog, 904 So.2d 981, 986 (Miss.2004), this Court imposed a public reprimand, a fíne, and costs on Judge Hartzog after criminal charges were dismissed without prejudice. While Judge Hartzog’s conduct in this case is not the same as in the other cases, his conduct shows a pattern of continued violations of the Code of Judicial Conduct.
(5)Whether “moral turpitude” was involved.
¶ 24. This Court has defined the term “moral turpitude” to include “actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Sanford, 941 So.2d at 217 (quoting Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 n. 2 *1197 (Miss.2004)). Judge Hartzog’s conduct interfered with the administration of justice by delaying the resolution of an eviction action. In addition, Judge Hartzog’s conduct shows a continued pattern of violations of the Code of Judicial Conduct.
(6) The presence or absence of mitigating or aggravating circumstances.
¶ 25. We see no evidence of mitigating circumstances in the record. The Commission asserts that Judge Hartzog has an aggravating circumstance in that he has not acknowledged any improper conduct. Indeed, Judge Hartzog never acknowledged any wrongdoing either at the hearing or in his written submission of information to the Commission.
CONCLUSION
¶ 26. This Court finds that the conduct of Johnny C. Hartzog, Justice Court Judge for Post 2, Jefferson Davis County, Mississippi, constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 27. For the reasons stated, this Court orders Justice Court Judge Johnny C. Hartzog to be publicly reprimanded; to be suspended from office for a period of six months without pay; and to be assessed costs in the amount of $1,411.55. This public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Jefferson Davis County in which a jury venire is present, with Judge Hartzog present.
¶ 28. JUDGE JOHNNY C. HART-ZOG, JUSTICE COURT JUDGE FOR JEFFERSON DAVIS COUNTY, DISTRICT TWO, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT WHEN THE VENIRE PANEL MEETS BY THE PRESIDING JUDGE OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL, IS SUSPENDED FROM OFFICE WITHOUT PAY FOR SIX (6) MONTHS, AND IS ASSESSED COSTS IN THE AMOUNT OF $1,411.55.
WALLER, C.J., GRAVES, P.J., DICKINSON, LAMAR AND KITCHENS, JJ., CONCUR. RANDOLPH, J„ CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON AND RANDOLPH, JJ.; PIERCE, J„ JOINS IN PART. PIERCE, J„ SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ.

. Judge Hartzog sent two letters dated January 19, 2009, with an undated recusal letter and a letter dated March 18, 2009. The Commission referred to the January 19 letter as Judge Hartzog's "answer” and the March 18 letter as an "addendum.”

. Judge Hartzog initially stated that Oatis had recused himself on July 10, 2008. However, when questioned about the continuance of the case from July 10 to August 7, 2008, Judge Hartzog stated that the discussion had occurred on August 7. While there is a slight discrepancy in the accounting of the dates Judge Hartzog claims the statements were made, it is of no moment to the resolution of this matter before the Court.

. The distinction between Sanford and this case is that this Court also found that Judge Sanford had violated Canons 3B(1) and 3E, whereas the Commission found that Judge Hartzog had violated Canons 3C(1) and 4A.