904 So.2d 981 (2004)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Johnny C. HARTZOG.
No. 2002-JP-00255-SCT.
Supreme Court of Mississippi.
November 18, 2004.
*982 Luther T. Brantley, III, attorney for appellant.
Edward J. Peters, Jackson, attorney for appellee.
EN BANC.
WALLER, Presiding Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance and Jefferson Davis County Justice Court Judge Johnny C. Hartzog have jointly recommended that Judge Hartzog be publicly reprimanded for judicial misconduct, assessed the costs of the proceedings ($100), and fined $4056.30 for his involvement in writing over $330,000 in bad checks. We adopt the recommendation of the Commission and Judge Hartzog.

FACTS
¶ 2. In May of 2001, Jefferson County Justice Court Judge Johnny C. Hartzog and Stacy R. Adams presented a $1000 check bearing both of their names to ERA Real Estate as an escrow deposit on a real estate contract for a house that was to be purchased for Adams and her three children.[1] The next month, Judge Hartzog and Adams presented a check for $128,798.25 to Richland Title Company for the purpose of buying the house.
¶ 3. Richland Title refused the personal check and held it, the title, and the deed with the understanding that Judge Hartzog and Adams would bring a certified check to secure the title and deed. When Judge Hartzog and Adams did not return *983 with the certified check, Richland Title presented the check for payment but discovered that the account had been closed. Richland Title then sold the property to another buyer.
¶ 4. That same day, Judge Hartzog and Adams presented a check for $172,072.51 to Mack Grubbs Ford-Mercury for the purchase of six new automobiles. The dealership turned over possession of the vehicles to Judge Hartzog and Adams, only to subsequently discover that the account had been closed. Before the day was over, the pair wrote one more check, this one for $33,754.90 for the purchase of a new Mercury Mountaineer. This dealership, like the previous, turned over possession, later learning that the account was closed. Judge Hartzog's attorney told the Commission that each time a purchase was made, Adams told the businesses that there was no money in the account.
¶ 5. Judge Hartzog's circuitous explanation for his behavior was Adams duped him into all of these purchases. He claims that Adams was a con artist who convinced him she had won $16,000,000.00 during a trip to the casinos. According to Judge Hartzog, Adams also told him that she could not get her hands on her winnings until January. As Judge Hartzog explained:
Now, she told me she had put her money on a freeze [for fear her ex-boyfriend would get to it,] and she couldn't get it until January of [2001]. And that's why she asked me, since I had credit, and [my wife] and I had worked hard all our lives and have a nickel or two, to loan her this money, and she was going to pay us back, you know, in a month after she got her money with interest.
¶ 6. Judge Hartzog says he took this complete stranger at her word and began plans to help her use the money to build a world-class truck stop that would service up to 100 eighteen-wheelers at a time. He says they also had plans to develop subdivisions separately targeting senior citizens and young people. Judge Hartzog explained that he had no idea there was not enough money to cover all of the purchases they made during their buying spree, because his wife was the one who was in charge of keeping up with the finances. However, Judge Hartzog's wife claimed she knew nothing about it either, because the judge had not told her about the deal.
¶ 7. Judge Hartzog eventually returned five of the vehicles and paid the dealership the $24,000 in depreciation incurred by driving the new vehicles off the lot. Judge Hartzog purchased the other two vehicles.
¶ 8. Judge Hartzog was indicted for the felony crimes of false pretense and attempted false pretense. The Mississippi Commission on Judicial Performance then filed a formal complaint against Judge Hartzog, recommending that he be suspended with pay until resolution of the criminal matter. In Mississippi Commission on Judicial Performance v. Hartzog, 822 So.2d 941 (Miss.2002), we adopted the recommendation of the Commission. In November of 2002, the criminal charges pending against Judge Hartzog were dismissed with prejudice. The Commission subsequently voted to terminate the interim suspension, and we terminated the suspension.
¶ 9. The Commission now brings another formal complaint based upon the aforementioned facts, alleging that Judge Hartzog has violated Canons 1, 2A, 2B, and 5C (1) of the Code of Judicial Conduct of Mississippi Judges. See Code of Judicial Conduct of Miss. Canons 1, 2A, 2B, & 5C (1) (2004) (admonishing judges to uphold integrity and independence of judiciary, avoid impropriety and appearance of impropriety, and regulate extra-judicial activities *984 to minimize risk of conflict with judicial duties). The Commission also alleges that Judge Hartzog's actions constitute willful misconduct in office and conduct prejudicial to the administration of justice which bring the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890. Finally, the Commission and Judge Hartzog jointly recommend that Judge Hartzog be publicly reprimanded, assessed costs of the proceedings ($100), and fined $4056.30 (the amount paid by Jefferson Davis County to the interim judge during Judge Hartzog's suspension).

DISCUSSION
¶ 10. We conduct de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, and recommendations of the Mississippi Commission on Judicial Performance. Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). While we do give great deference to the Commission's findings, we are also charged to render an independent judgment. Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994). We are the trier of fact and have the sole power to impose sanctions in judicial misconduct cases. Id.

I. Judicial Misconduct
¶ 11. The Commission found that Judge Hartzog's conduct violated Article 6, Section 177A of the Mississippi Constitution of 1890 as amended, in that he engaged in "willful misconduct in office" and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]" Miss. Const. art. 6, § 177A (b) & (e). In regard to what actions constitute willful misconduct in the judicial office, we have held:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
In re Quick, 553 So.2d 522, 524-25 (Miss. 1989).
¶ 12. Judge Hartzog has agreed to the Commission's findings and recommendation and has joined the Commission's motion for approval of its recommendations. Accordingly, the judge acknowledges that his actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute, and we need not make any further findings on this issue.

II. Appropriate Punishment
¶ 13. The sanctions available to us when disciplining a judge include (1) removal from office, (2) suspension from office, (3) fine, and (4) public censure or reprimand. Miss. Comm'n on Judicial Performance v. Teel, 863 So.2d 973, 975 (Miss.2004) (citing Miss. Const. art. 6, § 177A); cf. Miss. Comm'n on Judicial Performance v. Walker, 565 So.2d 1117, 1128-32 (Miss.1990) (compiling list of judicial performance sanctions in Mississippi). As we have previously held, the appropriate "sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary, and protect the public." Miss. Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 877 (Miss.1998).
*985 ¶ 14. In order to more consistently achieve the goals of judicial discipline set forth in Sanders, we recently held that the appropriateness of judicial sanctions must assessed based on the following six factors: (1) The length and character of the judge's public service;[2] (2) Whether there is any prior case law on point;[3] (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved;[4] and (6) The presence or absence of mitigating or aggravating circumstances. Mississippi Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
¶ 15. First, Judge Hartzog has been a justice court judge for over twenty years; however, there is no evidence on the record of the character of his public service.
¶ 16. Next, a similar case to the one at hand is Mississippi Commission on Judicial Performance v. Franklin, 704 So.2d 89 (Miss.1997), in which the Commission brought a formal complaint against a judge who heard a case between a friend/distant relative and a third party, wrote a check for insufficient funds, and violated the law by failing to file a report of campaign contributions and expenditures.[5] We held that the appropriate punishment was public reprimand, a fine of $1500, and suspension for thirty days without pay. Id. at 94; see also Judicial Discipline & Disability Comm'n v. Thompson, 341 Ark. 253, 16 S.W.3d 212 (2000) (removing judge who engaged in practice of law, failed to honor agreement to remunerate his client's health insurer from settlement funds, concealed attorney's fees, wrote fifty-nine checks for insufficient funds, did not pay federal income taxes, used fictitious license plate, and failed to deposit client funds in trust account); In re Inquiry Concerning a Judge, 275 Ga. 404, 566 S.E.2d 310 (2002) (removing from office judge who, among other things, ordered party to pay fine without providing party notice of hearing or opportunity to be heard, ordered warrantless search of home without conducting evidentiary hearing, and wrote about forty-five business and personal checks for insufficient funds); In re Riley, 298 S.C. 329, 380 S.E.2d 816 (1989) (publicly reprimanding judge who, among other things, mismanaged office funds by depositing two personal checks into office account which were returned for insufficient funds). Our sister states' precedent, as well as our own, dictates that although writing checks for insufficient funds is reprehensible conduct for a judge, usually it must be in conjunction with some other *986 inappropriate act or acts before doing so warrants removal.
¶ 17. Third, Judge Hartzog, duped though he may claim to have been, engaged in a one-day spending expedition resulting in the purchase or attempted purchase of over $330,000-worth of cars and a house. However, notwithstanding the harm done to the public confidence in the judiciary of Jefferson Davis County, any economic injury suffered by the businesses visited by Judge Hartzog and Adams has been repaid.
¶ 18. Fourth, although the one-day shopping spree may be an isolated incident for Judge Hartzog, he has been disciplined by this Court in the past. In Mississippi Commission on Judicial Performance v. Hartzog, 646 So.2d 1319, 1320-21 (Miss. 1994), we publicly reprimanded and assessed the costs of the proceedings to Judge Hartzog after he falsely notarized a signature while in his official capacity and entered orders in two cases not pending before his court. Though the conduct in these instances may vary, the conduct at hand as well as the conduct for which Judge Hartzog has been previously reprimanded evidences a pattern of carelessness in his personal and professional dealings.
¶ 19. Fifth, moral turpitude was involved in this offense. In light of the fact that Judge Hartzog's name was on the checks (particularly checks of such great amount), he had a responsibility to know how much was in the account. Writing checks for such a great amount of money without knowing whether his and Adams' account was open was an act of dishonesty that carelessly put at risk other people's economic livelihood.
¶ 20. Finally, aggravating circumstances are present in that Judge Hartzog wrote three bad checks in one day. However, mitigating factors are present in that Judge Hartzog has compensated those he injured and has publicly acknowledged the inappropriateness of his conduct and agrees with the findings of the Commission.
¶ 21. After weighing the gravity of the offense as well as the extenuating circumstances which dictate a less harsh outcome than could have otherwise resulted, and after consideration of the Gibson factors, we accept and adopt the joint recommendation of the Commission and Judge Hartzog.

CONCLUSION
¶ 22. Judge Hartzog's actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. Accordingly, we adopt the recommendation of the Commission and Judge Hartzog and impose a public reprimand, a fine of $4056.30 payable to Jefferson Davis County, and assessment of the costs of these proceedings ($100). The public reprimand shall be administered in the Jefferson Davis County Circuit Court by the presiding circuit court judge in open court with Judge Hartzog present on the first day of the next court term after this decision becomes final.
¶ 23. JEFFERSON DAVIS COUNTY JUSTICE COURT JUDGE JOHNNY C. HARTZOG SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL, SHALL PAY THE COSTS OF THIS PROCEEDING OF $100.00, AND SHALL PAY A FINE OF $4056.30 TO JEFFERSON DAVIS COUNTY.
SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND *987 RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.
NOTES
[1] All checking accounts referred to in this opinion were in the names of Judge Hartzog and Adams.
[2] We note that in the future, proof of this prong could include evidence of a judge's ability to maintain a reasonable amount of order over the court's docket, his ability to assert, with civility, his authority over those who appear before him, and his impartiality in decision-making.
[3] Although this prong provides guidance in our evaluation of the appropriate punishment, it is not dispositive since the six factors in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss. 2004) must be considered equally. Consequently, application of the new considerations may necessitate a departure from previous decisions.
[4] As we have noted, "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." In re Gibson, 883 So.2d at 1158 n. 2.
[5] Judge Franklin had already been publicly reprimanded and fined in a previous case, Mississippi Commission on Judicial Performance v. Franklin, 630 So.2d 995 (Miss.1994), for driving with an expired tag and intervening in a matter concerning her brother.