32 So.3d 1188 (2010)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Johnny C. HARTZOG.
No. 2009-JP-01022-SCT.
Supreme Court of Mississippi.
April 22, 2010.
*1190 Darlene D. Ballard, Ayanna Batiste Butler, attorneys for appellant.
Johnny C. Hartzog, Appellee, pro se.
EN BANC.
CHANDLER, Justice, for the Court:
¶ 1. On November 11, 2008, the Mississippi Commission on Judicial Performance (Commission) filed a formal complaint against Johnny C. Hartzog, Justice Court Judge for District Two, Jefferson Davis County, Mississippi, alleging judicial misconduct which was actionable pursuant to Article 6, Section 177A, Mississippi Constitution of 1890, as amended. While the record reveals no formal answer by Judge Hartzog, it does contain two letters signed by Judge Hartzog relating to this matter and an undated copy of an order of recusal.[1] The Committee of the Commission on Judicial Performance had a hearing on the allegations on April 10, 2009. Following the hearing on May 28, 2009, the Committee filed its Findings of Facts, Conclusions of Law and Recommendations. Judge Hartzog objected to these findings. The Commission filed Commission Findings of Fact, Conclusions of Law and Recommendations on June 22, 2009, with this Court. The Commission found that Judge Hartzog's conduct violated Canons 1, 2, 3, and 4 of the Code of Judicial Conduct. Further, the Commission found that Judge Hartzog's conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice bringing the judicial office into disrepute pursuant to Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. The Commission recommended that Judge Hartzog receive a public reprimand; suspension from the office of Justice Court Judge, Jefferson Davis County, Post 2, for a period of six months without pay; and assessment of costs of the proceeding in the amount of $1,411.55. This Court adopts the Commission's recommendation.

FACTS
¶ 2. On April 10, 2009, the Commission conducted a hearing in this judicial-performance matter. Judge Hartzog testified that he was the Justice Court Judge in Jefferson Davis County, District Two, in Prentiss, Mississippi. He was elected in 1981 and was serving his twenty-ninth year as justice court judge. This case involved a tenant-removal action before Judge Hartzog. Carol Oatis filed an affidavit to remove a tenant in Jefferson Davis County. Oatis sought removal of Veronica Moses from Oatis's land located on Fate Ward Road in Carson, Mississippi. The justice court file contained a notice to vacate the property addressed to Moses. In addition, the file contained a summons for Moses to appear in court on April 10, 2008.
*1191 ¶ 3. According to Judge Hartzog, the following events transpired over a number of court dates. Oatis and Moses appeared in court, and Moses requested a continuance for another party to be present, DiMa Homes. Oatis, Moses, and DiMa Homes had been in litigation concerning construction of the home on the same property at issue in this disciplinary matter. Judge Hartzog granted the continuance. When he granted the continuance, Judge Hartzog stated that he did not ask the parties any questions. The case was continued a number of times. On June 5, 2008, the case was continued to July 10, 2008, because Judge Hartzog was recovering from surgery. On July 10, 2008, the file indicated that the case was continued to August 7, 2008, because DiMa Homes was not present in court. On August 7, 2008, Oatis and Moses appeared before Judge Hartzog.[2] During this hearing, Judge Hartzog stated that Oatis said "I just want her out of my house." Moses mentioned DiMa Homes, and then Oatis stated "I recuse myself from this case." At this point, Judge Hartzog stated "I recuse myself too from this case. And you can carry it to the next judge."
¶ 4. Judge Hartzog knew Moses's father, Henry Johnson. Johnson died in 2001 or 2002 prior to the 2008 eviction case. Both Judge Hartzog and Johnson had served on the deacon board of the same church. In addition, Judge Hartzog knew both litigants, Moses since her birth and Oatis for a long time prior to the eviction action. Judge Hartzog also had a landscaping business and had cleared the property twice at Johnson's request and had spread gravel on the driveway at Moses's request. This work was done a minimum of eight years prior to Oatis's eviction case.
¶ 5. Oatis stated that he owned property in Jefferson Davis County. Moses had dated Oatis's son and had asked to put a mobile home on Oatis's property. Oatis told Moses that she could place a mobile home on his property. A few months later, Oatis was informed that a house was being built on his property. When Oatis visited his property, he found a house that was eighty percent complete and a DiMa Homes sign on the land. Litigation ensued in a separate case in the Chancery Court of Jefferson County over that matter. The chancery court ultimately determined that Moses had no interest in the property.
¶ 6. Oatis later filed an affidavit with the justice court to remove Moses from the property. According to Oatis, on April 10, 2008, he told Judge Hartzog that he wanted Moses evicted from his property. At this point, Oatis claimed that Judge Hartzog had told Oatis that Johnson, Moses's father, had told Judge Hartzog "this and that." Further, Judge Hartzog asked Oatis how much money he wanted for the property. When Oatis stated "$50,000," Judge Hartzog stated that the price was "too much." Oatis stated that he had told Judge Hartzog "[w]ell, you have a conflict of interest in this, judge." The case was continued in order to have DiMa Homes present in court. On July 10, 2008, Oatis stated that he took the "Fifth" because Judge Hartzog kept talking about Oatis selling the property to Moses. When Judge Hartzog told Oatis how he should handle the matter, Oatis told the judge "You have a conflict of interest. You need *1192 to dismiss yourself." Oatis stated that Judge Hartzog suggested that Oatis should accept $1,200 for the property. It was not until the August 7, 2008, hearing that Oatis knew that Judge Hartzog was no longer presiding over the matter. Exhibits 5, 6, and 7 were a series of documents that Oatis had filed complaining about Judge Hartzog's conduct. Oatis stated that he thought Judge Hartzog had a conflict of interest because he had cleared the land and because Judge Hartzog had stated, in court, that Johnson had told Judge Hartzog that he was proud of his daughter (Moses) for having her own place.
¶ 7. Charles McGilberry, Oatis's brother-in-law, corroborated Oatis's testimony that at one of the court hearings, Oatis took the "Fifth." In addition, McGilberry stated that Oatis was there for an eviction matter, while the judge spoke about settling a land deal. When asked whether any numbers were discussed, McGilberry stated that "I thought something like $1200 or something like that." McGilberry also stated that he had heard Oatis asking Judge Hartzog not to hear the case, that he never had heard Judge Hartzog recuse himself, and that the case was continued in order to bring the company responsible for building the house to court.
¶ 8. Jefferson County Justice Court Clerk Judy Cole testified that she had seen Oatis at the justice court for a civil, eviction case. She stated that, during the April 10, 2008, hearing, Larry Johnson, Moses's brother, had suggested that Oatis sell the property. Then, Judge Hartzog had asked Oatis how much money he wanted for the property. Cole also stated that Oatis had asked Judge Hartzog to recuse himself when they were discussing Judge Hartzog's landscaping business. According to Cole, Judge Hartzog had stated, "Well, I can keep my contracting business and my judging separate." The case was continued because Moses requested that DiMa Homes be present. At the July 10 court hearing, Cole stated that Oatis had pleaded the "Fifth" because he did not want to talk about the house. She also stated that Oatis again had asked Judge Hartzog to recuse himself. Judge Hartzog recused himself after an investigator with the Commission on Judicial Performance spoke with Cole, which was some time after July 10, 2008.
¶ 9. Moses testified that, after the house was completed in 1999, Judge Hartzog had "smoothed it out all the way `round the house.'" Moses did not recall any discussion about Judge Hartzog recusing himself from the case. However, she stated that Judge Hartzog had asked Oatis what he wanted for the land and whether Oatis would do as he promised. At the next court date, Moses stated that Oatis had pleaded the "Fifth," and there had been no discussion by Judge Hartzog about the sale of the property. Moses was not aware that Judge Hartzog had recused himself from the case until she attended the next scheduled hearing. On cross-examination, Moses was questioned about Oatis's statements concerning the home on his property. Oatis recused himself after Moses told the judge about a statement that Oatis had made concerning the house on his property. Moses also admitted that Judge Hartzog had recused himself after Oatis had recused himself from the case. She stated that Judge Hartzog had smoothed out the area around the house in 1999 or 2000, some eight or nine years prior to the eviction case. She also stated that her brother had asked Oatis in court how much money he wanted for the property.
¶ 10. Luther T. Brantley testified concerning prior disciplinary actions taken by the Commission against Judge Hartzog.

*1193 DISCUSSION
¶ 11. The standard of review for this Court in judicial misconduct proceedings is de novo. Miss. Comm'n on Judicial Performance v. Osborne, 16 So.3d 16, 18 (Miss.2009) (Osborne IV); Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009); Miss. Comm'n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008). This Court gives great deference to the Commission's findings which are based on clear and convincing evidence. Osborne, 16 So.3d at 18. Notwithstanding the great deference given to the Commission's findings, this Court is bound to exercise an independent inquiry into judicial-conduct matters. Miss. Comm'n on Judicial Performance v. Carr, 990 So.2d 763, 766 (Miss.2008); Miss. Comm'n on Judicial Performance v. Agin, 987 So.2d 418, 419 (Miss.2008); Miss. Comm'n on Judicial Performance v. Hartzog, 904 So.2d 981, 984 (Miss.2004). This Court, in exercising its independent inquiry, is not bound by any findings of the Commission and may impose additional sanctions in a judicial-misconduct proceeding. Osborne IV, 16 So.3d at 19; Miss. Comm'n on Judicial Performance v. Boland, 975 So.2d 882, 888 (Miss.2008) (Boland I).

I. Whether Judge Hartzog's conduct constitutes willful misconduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution.
¶ 12. In judicial-performance proceedings, this Court determines whether the conduct of the judge constitutes willful misconduct, prejudicial to the administration of justice, which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended. Willful misconduct has been defined by this Court as follows:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 212-213 (Miss. 2006) (quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004)). Actual, willful behavior is of no import. Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000). This Court has held that a judge "through negligence or ignorance not amounting to bad faith, [may] behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute[,]" and the effect of these actions "is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions." In re Anderson, 451 So.2d 232, 234 (Miss.1984).
¶ 13. The Commission determined by clear and convincing evidence that Judge Hartzog had violated Judicial Conduct Canons 1 (integrity and independence of the judiciary), 2A (promotion of public confidence in the integrity and impartiality of the judiciary), 2B (family, social, or other relationships influencing judicial conduct and judgment), 3B(2) (faithfulness and competence in the law), 3B(7) (ex parte communications), 3B(8) (performance of duties impartially and diligently/disposing *1194 of judicial matters promptly, efficiently, and fairly), 3C(1) (impartiality and diligence in performing administrative responsibilities), and 4A (minimizing risk of conflict between judicial extrajudicial obligations). In addition, the Commission found that Judge Hartzog's conduct constituted willful misconduct in office and conduct that was prejudicial to the administration of justice, bringing the judicial office into disrepute.
¶ 14. The Commission determined that when Oatis and Moses had appeared before Judge Hartzog, the judge had an obvious conflict of interest. Judge Hartzog had known Moses all her life; was friends with her father and on the board of deacons at the same church as her father, Johnson; had performed yard work on the property that was at issue in the eviction case; and had spoken with Johnson, prior to Johnson's death, about the fact that Johnson was proud of Moses for owning her own home. In addition, Judge Hartzog had tried to negotiate the sale of the property by Oatis to Moses instead of hearing evidence in the eviction matter. Further, Judge Hartzog had commented in court before Oatis and Moses about discussions which had taken place some seven or eight years prior to the eviction action, between Moses's deceased father and himself concerning the property at issue in the eviction action. When Oatis had requested that Judge Hartzog recuse himself, the judge had claimed that he orally had recused himself. However, a written recusal was not entered until sometime between the July 10, 2008, and the August 7, 2008, court dates and after an investigator with the Commission spoke to Cole, the Jefferson Davis County Justice Court Clerk, about the matter. The Commission also found that Judge Hartzog had failed to conduct his extrajudicial activities in a manner that minimized risk of conflict with judicial obligations. Judge Hartzog had performed yard work on the property in question prior to the eviction action at the time that Moses lived on the property. He also had failed to acknowledge that conflicts of interest may arise when yard services customers appear before him and that he may gain knowledge of information relating to a litigant's case in the process of serving them in a business capacity. The Commission determined that Judge Hartzog had a fundamental lack of understanding of legal principles in connection with the recusal process. Judge Hartzog had stated that "recusal" meant to dismiss a case. The Commission found that Judge Hartzog obviously had no understanding of what constitutes a recusal or an underlying conflict of interest that requires recusal.
¶ 15. This Court finds that Judge Hartzog's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

II. Whether Judge Hartzog should be publicly reprimanded, suspended without pay for a period of six months, and assessed all costs of the proceeding as recommended by the Commission.
¶ 16. The Commission recommended that Judge Hartzog receive a public reprimand, be suspended for a period of six months without pay, and assessed costs in the amount of $1,411.55.
¶ 17. Imposition of sanctions is a duty conferred to the discretion of the Supreme Court. Boland I, 975 So.2d at 883. The Mississippi Constitution provides sanctions that this Court may impose in judicial performance matters. The Mississippi Constitution states:
On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, *1195 fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
Miss. Const. art. 6, § 177A (1890). However, this Court is mindful that the sanctions imposed must fit the offense. Boland I, 975 So.2d at 893. "The primary purpose of judicial sanctions is not punishment of the individual judge but `to restore and maintain dignity and honor of the judicial office and to protect the public against future excesses.'" Miss. Comm'n on Judicial Performance v. Osborne, 11 So.3d 107, 116 (Miss.2009) (Osborne III) (quoting Miss. Comm'n on Judicial Performance v. Guest, 717 So.2d 325, 329 (Miss.1998)).

(1) The length and character of the judge's public service.
¶ 18. Judge Hartzog has held his position for twenty-nine years. No further evidence of Judge Hartzog's public service is in the record.

(2) Whether there is any prior caselaw on point.
¶ 19. This Court has imposed similar sanctions to those recommended by the Commission in other cases. Here, the Commission recommends a public reprimand, suspension without pay for a period of six months, and costs. In Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), this Court imposed a public reprimand, costs, and a suspension on a justice court judge for repeated violations of the Canons resulting in multiple disciplinary actions against him. Britton, 936 So.2d at 907. In Britton, this Court set out the history of a justice court judge's alleged ex-parte communications resulting in six complaints against him over a six-year period. Id. at 900-03. As prior disciplinary action had been taken on some of the other allegations in the complaints, this Court's opinion in Britton concerned only the sanctions for the last two complaints concerning exparte communications and setting aside a default judgment and setting aside another judge's order. Id. at 903.
¶ 20. In Mississippi Commission on Judicial Performance v. Cowart, 936 So.2d 343, 348-51 (Miss.2006), this Court imposed a public reprimand, costs, and a suspension without pay for a number of offenses including acknowledging a conflict of interest. In Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008) (Osborne II), this Court imposed a public reprimand, costs, and a six-month suspension for, among other things, failing to maintain a high standard of conduct, allowing familial or social relationships to influence the judge's conduct, and lending the prestige of the office to aid members of his family. Osborne II, 977 So.2d at 327. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006), this Court imposed a public reprimand, costs, and suspension for interfering with a driving-under-the-influence charge. Sanford, 941 So.2d at 218. This Court found that Judge Sanford had violated almost the identical canons as Judge Hartzog is accused of violating, including Canons 1, 2A, *1196 2B, 3B(2), 3B(7), and 3B(8).[3]Id. at 213. In addition, in Mississippi Commission on Judicial Performance v. Carr, 990 So.2d 763, 770 (Miss.2008), this Court imposed a public reprimand, suspension without pay for a period of sixty days, a fine, and costs. Judge Carr was disciplined for engaging in ex-parte communications and using the power of his office to get a citizen to return pieces of fence to a cemetery. Id. at 768-69.

(3) The magnitude of the offense and the harm suffered.
¶ 21. Oatis was affected by Judge Hartzog's conduct because his eviction action was delayed. Once Judge Hartzog recused himself from the case, another justice court judge heard the case. Ultimately, the case was dismissed without prejudice because the justice court judge determined that the case was not within the justice court's jurisdiction. Had the case been dismissed in April 2008, Oatis would have been able to seek further relief via other avenues. In addition, Oatis was subjected to pressure to settle the matter by selling the property to Moses. The cause of action was for an eviction, not settlement of a dispute through negotiations and sale of land.
¶ 22. It is reasonable to conclude that the public's perception of the judiciary, through Judge Hartzog's actions, was harmed. Judge Hartzog attempted to negotiate a land sale in place of making a decision on a tenant-eviction matter for the same property in question. One litigant requested that Judge Hartzog recuse himself because the judge had related information that the other litigant's father had told Judge Hartzog. "Official integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary." Vess, 10 So.3d at 493 (quoting In re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985)).

(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 23. Judge Hartzog has had prior disciplinary actions against him in the past. In Mississippi Commission on Judicial Performance v. Hartzog, 646 So.2d 1319, 1320-21 (Miss.1994), this Court imposed a public reprimand and costs on Judge Hartzog for falsely notarizing a signature and entering two orders in cases that were not before him. In Mississippi Commission on Judicial Performance v. Hartzog, 822 So.2d 941 (Miss.2002), this Court imposed a suspension on Judge Hartzog while criminal charges relating to writing bad checks were pending against him. In the companion case, Mississippi Commission on Judicial Performance v. Hartzog, 904 So.2d 981, 986 (Miss.2004), this Court imposed a public reprimand, a fine, and costs on Judge Hartzog after criminal charges were dismissed without prejudice. While Judge Hartzog's conduct in this case is not the same as in the other cases, his conduct shows a pattern of continued violations of the Code of Judicial Conduct.

(5) Whether "moral turpitude" was involved.
¶ 24. This Court has defined the term "moral turpitude" to include "actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Sanford, 941 So.2d at 217 (quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 n. 2 *1197 (Miss.2004)). Judge Hartzog's conduct interfered with the administration of justice by delaying the resolution of an eviction action. In addition, Judge Hartzog's conduct shows a continued pattern of violations of the Code of Judicial Conduct.

(6) The presence or absence of mitigating or aggravating circumstances.
¶ 25. We see no evidence of mitigating circumstances in the record. The Commission asserts that Judge Hartzog has an aggravating circumstance in that he has not acknowledged any improper conduct. Indeed, Judge Hartzog never acknowledged any wrongdoing either at the hearing or in his written submission of information to the Commission.

CONCLUSION
¶ 26. This Court finds that the conduct of Johnny C. Hartzog, Justice Court Judge for Post 2, Jefferson Davis County, Mississippi, constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 27. For the reasons stated, this Court orders Justice Court Judge Johnny C. Hartzog to be publicly reprimanded; to be suspended from office for a period of six months without pay; and to be assessed costs in the amount of $1,411.55. This public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Jefferson Davis County in which a jury venire is present, with Judge Hartzog present.
¶ 28. JUDGE JOHNNY C. HARTZOG, JUSTICE COURT JUDGE FOR JEFFERSON DAVIS COUNTY, DISTRICT TWO, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT WHEN THE VENIRE PANEL MEETS BY THE PRESIDING JUDGE OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL, IS SUSPENDED FROM OFFICE WITHOUT PAY FOR SIX (6) MONTHS, AND IS ASSESSED COSTS IN THE AMOUNT OF $1,411.55.
WALLER, C.J., GRAVES, P.J., DICKINSON, LAMAR AND KITCHENS, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON AND RANDOLPH, JJ.; PIERCE, J., JOINS IN PART. PIERCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ.
CARLSON, Presiding Justice, Specially Concurring:
¶ 29. The majority finds that Jefferson Davis County Justice Court Judge Johnny C. Hartzog's conduct in today's case constituted willful misconduct in office, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. I agree.[4] The majority concludes *1198 that the appropriate sanction for Judge Hartzog's conduct in today's case is a public reprimand, suspension from office for a period of six months without pay, and assessment of costs. I agree. My reason for writing separately is to expand the discussion beyond that found in the excellently written majority opinion.
¶ 30. Once this Court finds that a judge has engaged in misconduct, it becomes our solemn responsibility to consider the appropriate sanctions by applying the Baker/Gibson factors to the evidence before us. In Re Baker, 535 So.2d 47, 54 (Miss. 1988); Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004) (hereinafter "Gibson factors"). Gibson factor number four is "[w]hether the misconduct is an isolated incident or evidences a pattern of conduct." Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 216 (Miss.2006) (citing Gibson, 883 So.2d at 1158).
¶ 31. Thus, the majority opinion appropriately discusses this factor by way of a brief recitation of the history of Judge Hartzog's prior judicial discipline. In expanding this discussion, I begin by borrowing language from prior decisions of this Court:
As this Court stated on an earlier occasion, "[t]his was hardly Sartain's maiden judicial voyage." See, e.g., Sartain v. City of Water Valley, 528 So.2d 1125 (Miss.1988); Sartain v. Caulfield, 465 So.2d 999 (Miss.1985) (memorandum of decision); Sartain v. State, 406 So.2d 43 (Miss.1981); Sartain v. White, 388 So.2d 884 (Miss.1980) (memorandum of decision); Sartain v. Sanders, 358 So.2d 1327 (Miss.1978) (memorandum of decision); and Sanders v. Sartain, 353 So.2d 1144 (Miss.1978) (memorandum of decision).
Sartain v. White, 588 So.2d 204, 207 n. 2 (Miss.1991). In my opinion, this description of Sartain certainly applies as well to Judge Hartzog. As noted in the majority opinion, Judge Hartzog has been the subject of three informal actions by the Commission in 1987, 1991, and 1996, as well as one private reprimand and two public reprimands.
¶ 32. At the hearing before a committee appointed by the Commission, former Commission Executive Director Luther T. "Brant" Brantley, III, testified at length concerning Judge Hartzog's prior judicial discipline. Brantley's testimony is best summarized by the Commission in its brief before this Court (in reading this summary of Judge Hartzog's prior judicial conduct, I encourage the reader to keep in mind how similar some of these past instances are to the acts of judicial misconduct which bring Judge Hartzog before this Court once again today):
a. [Judge Hartzog's] first Complaint was filed with the Commission in 1987, and has similarities with the present Complaint. Commission Inquiry No. 1987-098 involved an eviction matter filed by a landlord against a tenant for nonpayment of rent. Instead of hearing and ruling on the eviction affidavit, [Judge Hartzog] proceeded to work out a payment plan for the tenant. The landlord took exception and filed a Complaint with the Commission. Commission minutes for November 13, 1987, indicate that the matter was resolved through informal Commission action and remanded to the files without prejudice. [Judge Hartzog] was so notified by Commission letter and advised to avoid such activities in the future.
b. Commission Minutes from April 12, 1991, indicate that Commission Inquiry *1199 No. 1990-147 was resolved through informal Commission action and that the matter was remanded to the files without prejudice. A letter forwarded to [Judge Hartzog] from the Commission Executive Director expressed concern regarding "your admission of letting some prisoners be released on an appearance bond without payment of the bond fee before their release." The matter was considered by the Commission to be serious, but there was no finding of judicial misconduct.
c. In its Formal Complaint filed against [Judge Hartzog], the Commission found that [Judge Hartzog] falsely acknowledged a deed, indicating that the grantor in the deed had personally appeared before him, when in fact the grantor had not done so, and further, that [Judge Hartzog] falsely entered orders in two separate cases purportedly pending in the Justice Court of Jefferson Davis County, Mississippi, when, in fact, no such cases existed. The Supreme Court, in Miss. Comm'n on Judicial Performance v. Johnny C. Hartzog, 646 So.2d 1319 (Miss.1994), adopted the Commission's recommendation and held that [Judge Hartzog] had violated the Code of Judicial Conduct and Miss. Const. § 177A by committing willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Further the Court approved the Commission's recommendation that [Judge Hartzog] be publicly reprimanded and assessed with the cost of the proceedings.
d. Commission Inquiry No. 1996-155 involved a recusal issue. In this Inquiry, [Judge Hartzog], in his official capacity as Justice Court Judge, Post 2, Jefferson Davis County, accepted a DUI guilty plea from his daughter. Following Commission investigation, the matter was resolved through informal Commission action and remanded to the files without prejudice. [Judge Hartzog] was advised that in the future, if a member of his family within the third degree of kinship appears before [Judge Hartzog] as a litigant, he should recuse himself, even if the family member is pleading guilty and receiving the standard fine.
e. On February 16, 2000, [Judge Hartzog], in his capacity as Justice Court Judge, presided over a civil action filed by Betty Ellis against Robert Jones. Prior to any hearing, [Judge Hartzog] called the parties into his office and attempted to negotiate a settlement, which resulted in [Judge Hartzog] informing the parties of what his ruling would be. No evidence and no sworn testimony was received. Based upon the actions of [Judge Hartzog], the parties did settle the matter. Subsequently, a complaint was filed with the Commission by one of the parties to that litigation. On August 9, 2001, the second Formal Complaint against [Judge Hartzog] was filed by the Commission in Inquiry No. 2000-047. The Commission found that the actions of [Judge Hartzog] amounted to forced negotiations under the pretense of a "settlement conference" ending with [Judge Hartzog] informing the parties how the matter should be handled and resolved. [Judge Hartzog] failed to follow rules of procedure, denied the parties their right to be heard in open court, and injected himself into the lawsuit between the parties to the action. In mitigation, the Commission found that the actions of [Judge Hartzog] were based on a sincere attempt to help the parties resolve their differences in as economical and amenable method as possible, and that the actions were not intended to willfully harm or deprive either party of any *1200 State or Constitutional rights. Having considered the matter, the Commission imposed a private reprimand and assessed costs to [Judge Hartzog].
f. On August 29, 2001, [Judge Hartzog] was indicted by the Grand Jury of Lamar County, Mississippi, on one felony count of false pretense and one felony count of attempted false pretense based upon his writing an insufficient funds check and a check written after the account was closed. Accepting the recommendation of the Commission, the Mississippi Supreme Court suspended [Judge Hartzog] from his duties as Justice Court Judge, Post 2, Jefferson Davis County, Mississippi on an interim basis, in Miss. Comm'n on Judicial Performance v. Johnny C. Hartzog, 822 So.2d 941 (Miss.2002). Subsequently, in an opinion rendered on November 18, 2004, in connection with the Commission's third Formal Complaint filed against [Judge Hartzog], the Supreme Court in Miss. Comm'n on Judicial Performance v. Johnny C. Hartzog, 904 So.2d 981 (Miss.2004), accepted and adopted the joint recommendation of the Commission and [Judge Hartzog], and found that [Judge Hartzog's] actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office in disrepute. Accordingly, [Judge Hartzog] was issued a public reprimand and a fine of $4,056.30, and assessed costs in the sum of $100.00.
¶ 33. Consistent with his acts of denial in these past cases, Judge Hartzog denies any wrongdoing in today's case. In fact, notwithstanding overwhelming evidence to the contrary, including the testimony of his own Justice Court Clerk, Judy Cole, Judge Hartzog denies that he was involved in a forced settlement in today's case by attempting to persuade Carol Oatis to sell the subject property to Veronica Moses.
¶ 34. I have come to the conclusion that some of the actions taken by Judge Hartzog in today's case best can be described in one word  bizarre. For instance, after the Formal Complaint was filed in this case on November 11, 2008, Judge Hartzog, evidently in "response" to the Formal Complaint, wrote a letter, dated January 19, 2009, to the Commission. In this letter, Judge Hartzog stated, inter alia:
On or about June or July 2008 Carol Oatis appeared in Justice Court and informed me that he was an attorney representing a client in a DUI case. I refused to allow Mr. Oatis to represent the young man, because he could not show proof of him being an attorney. Mr. Oatis told me that he went to the Air Force and he was superior over me. I informed him that he still could not represent the person without proof of him being an attorney.
First of all, I am at a total loss as to how Judge Hartzog's letter in response to the Commission's Formal Complaint was in any way relevant to the allegations contained in the Formal Complaint. Secondly, it is important to keep in mind that Judge Hartzog and Oatis had known each other for years! In fact, at the hearing before the committee, Judge Hartzog testified:
A. On what Little Brother said that I said?
Q. Wait a minute. Who's Little Brother?
A. Carol Oatis. That's what we all call him, Little Brother. Been knowing him.
Later, during the hearing, when Carol Oatis was testifying, Judge Hartzog, who was representing himself at the hearing, questioned Oatis:
Q. Okay. We'll move on. The day that I was fixing to have criminal court and you came in and told me that you was *1201 Attorney Carol Oatis representing a young man that was with you for DUI, and I told you what?
A. Judge, you're lying. It's just that simple. I can't put it no other way. You are lying, Judge. And I would like for you to bring whoever you said this come up, come bring them up. Let me tellask them a question. You lying, Judge. Judge, look at me in the eyes. You're lying.

(Emphasis added).
¶ 35. Additionally, after the committee submitted its Findings of Fact, Conclusions of Law and Recommendation to the Commission, Judge Hartzog mailed a letter, dated June 7, 2009, to Darlene Ballard, Senior Staff Attorney for the Commission, and in this letter, Judge Hartzog stated, inter alia:
I object to the committee's recommendation to be removed from the office of Justice Court Judge, Jefferson Davis County, post 2.
The case in question should never should (sic) have been filed in Justice Court, because it was already in Chancery Court and dealt with a house and land. Justice Court had no jurisdiction over the case.
What does this have to do with anything remotely relevant to the complaint lodged against Judge Hartzog before the Commission?
¶ 36. Quite frankly, stated in today's vernacular, I am of the opinion that Judge Hartzog has issues. Mike Royko, the late syndicated columnist who, over the years, wrote for the Chicago Daily News, the Chicago Sun-Times, and the Chicago Tribune, once wrote an article bemoaning the fact that our society had become a "blameless society." In other words, it had become commonplace in modern society for many of this nation's citizens to refuse to accept responsibilities for their actions, to refuse to be held accountable for their actions: "blame someone else for my conduct, but don't blame me." Judge Hartzog seems to epitomize this mindset. Throughout his history of defending the numerous claims of judicial misconduct on his part, Judge Hartzog has for the most part denied any wrongdoing.
¶ 37. When I first decided to write separately in this case, my primary reason was to go further than the majority opinion in discussing moral turpitude (Gibson factor number five), because, while the majority opinion correctly discussed moral turpitude, it made no specific finding as to whether moral turpitude was involved in today's case concerning Judge Hartzog. Before studying the record in this case, I opined that moral turpitude most likely was not involved in this case. However, after studying the record in this case in its entirety, I have changed my mind. "Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Gibson, 883 So.2d at 1158 n. 2. In other words, moral turpitude in the judicial arena is the antithesis of the concepts of good morals, justice, and honesty in dealing with those who come before the court.
¶ 38. I do not believe that the importance of all judges conducting themselves in accordance with the Code of Judicial Conduct can be overemphasized, and it also should be remembered that for most Mississippi citizens, their only contact with the judicial system will be at the grass-roots level via justice court. Therefore, these citizens' perception of our entire state-wide judicial system in Mississippi will be based on their experiencesgood or badin justice court.

*1202 There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the justice court judge. See In re Garner, 466 So.2d 884, 887 (Miss.1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process.
Sanford, 941 So.2d at 215 (quoting In re Bailey, 541 So.2d 1036, 1039 (Miss.1989)).
¶ 39. As of March 1, 2010, Judge Hartzog has been on the bench for twenty-nine years. It can only be hoped that today's decision will finally right his ship in his service to the citizens of Jefferson Davis County.
WALLER, C.J., DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION. PIERCE, J., JOINS THIS OPINION IN PART.
PIERCE, Justice, Specially Concurring:
¶ 40. I specially concur in this matter due to the fact that the Commission on Judicial Performance included as one factor that Judge Hartzog had "known Moses all her life ...." in its pleadings. Jefferson Davis County, much like many rural counties in Mississippi, is sparsely populated. Thus, it is not uncommon for a justice court judge to have known a party all of his or her life. In this case, much more was involved than simply knowing a party. I write separately, however, to emphasize that knowing a party, standing alone, is not the test for a conflict of interest. See Jenkins v. State, 570 So.2d 1191, 1192 (Miss.1990) (holding that this Court's objective test to determine whether a judge should recuse himself is whether "a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." (Emphasis added, internal citations omitted.))
WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.
NOTES
[1] Judge Hartzog sent two letters dated January 19, 2009, with an undated recusal letter and a letter dated March 18, 2009. The Commission referred to the January 19 letter as Judge Hartzog's "answer" and the March 18 letter as an "addendum."
[2] Judge Hartzog initially stated that Oatis had recused himself on July 10, 2008. However, when questioned about the continuance of the case from July 10 to August 7, 2008, Judge Hartzog stated that the discussion had occurred on August 7. While there is a slight discrepancy in the accounting of the dates Judge Hartzog claims the statements were made, it is of no moment to the resolution of this matter before the Court.
[3] The distinction between Sanford and this case is that this Court also found that Judge Sanford had violated Canons 3B(1) and 3E, whereas the Commission found that Judge Hartzog had violated Canons 3C(1) and 4A.
[4] I also agree with Justice Pierce's specially concurring opinion explaining that more is required to mandate recusal than just knowing a party for a long period of time, but instead, the appropriate criteria is the objective test espoused in Jenkins v. State, 570 So.2d 1191, 1192 (Miss. 1990). See also Jenkins v. Forrest County Gen. Hosp., 542 So.2d 1180, 1181 (Miss.1988).