CARLSON, Presiding Justice,
Specially Concurring:
¶ 29. The majority finds that Jefferson Davis County Justice Court Judge Johnny C. Hartzog’s conduct in today’s case constituted willful misconduct in office, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. I agree.[4] The majority con- *1198 eludes that the appropriate sanction for Judge Hartzog’s conduct in today’s case is a public reprimand, suspension from office for a period of six months without pay, and assessment of costs. I agree. My reason for writing separately is to expand the discussion beyond that found in the excellently written majority opinion.
¶ 30. Once this Court finds that a judge has engaged in misconduct, it becomes our solemn responsibility to consider the appropriate sanctions by applying the Baker/Gibson factors to the evidence before us. In Re Baker, 535 So.2d 47, 54 (Miss. 1988); Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004) (hereinafter “Gibson factors”). Gibson factor number four is “[wjhether the misconduct is an isolated incident or evidences a pattern of conduct.” Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 216 (Miss.2006) (citing Gibson, 883 So.2d at 1158).
¶ 31. Thus, the majority opinion appropriately discusses this factor by way of a brief recitation of the history of Judge Hartzog’s prior judicial discipline. In expanding this discussion, I begin by borrowing language from prior decisions of this Court:
As this Court stated on an earlier occasion, “[tjhis was hardly Sartain’s maiden judicial voyage.” See, e.g., Sartain v. City of Water Valley, 528 So.2d 1125 (Miss.1988); Sartain v. Caulfield, 465 So.2d 999 (Miss.1985) (memorandum of decision); Sartain v. State, 406 So.2d 43 (Miss.1981); Sartain v. White, 388 So.2d 884 (Miss.1980) (memorandum of decision); Sartain v. Sanders, 358 So.2d 1327 (Miss.1978) (memorandum of decision); and Sanders v. Sartain, 353 So.2d 1144 (Miss.1978) (memorandum of decision).
Sartain v. White, 588 So.2d 204, 207 n. 2 (Miss.1991). In my opinion, this description of Sartain certainly applies as well to Judge Hartzog. As noted in the majority opinion, Judge Hartzog has been the subject of three informal actions by the Commission in 1987, 1991, and 1996, as well as one private reprimand and two public reprimands.
¶ 32. At the hearing before a committee appointed by the Commission, former Commission Executive Director Luther T. “Brant” Brantley, III, testified at length concerning Judge Hartzog’s prior judicial discipline. Brantley’s testimony is best summarized by the Commission in its brief before this Court (in reading this summary of Judge Hartzog’s prior judicial conduct, I encourage the reader to keep in mind how similar some of these past instances are to the acts of judicial misconduct which bring Judge Hartzog before this Court once again today):
a. [Judge Hartzog’s] first Complaint was filed with the Commission in 1987, and has similarities with the present Complaint. Commission Inquiry No. 1987-098 involved an eviction matter filed by a landlord against a tenant for nonpayment of rent. Instead of hearing and ruling on the eviction affidavit, [Judge Hartzog] proceeded to work out a payment plan for the tenant. The landlord took exception and filed a Complaint with the Commission. Commission minutes for November 13, 1987, indicate that the matter was resolved through informal Commission action and remanded to the files without prejudice. [Judge Hartzog] was so notified by Commission letter and advised to avoid such activities in the future.
b. Commission Minutes from April 12, 1991, indicate that Commission Inquiry *1199 No. 1990-147 was resolved through informal Commission action and that the matter was remanded to the files without prejudice. A letter forwarded to [Judge Hartzog] from the Commission Executive Director expressed concern regarding “your admission of letting some prisoners be released on an appearance bond without payment of the bond fee before their release.” The matter was considered by the Commission to be serious, but there was no finding of judicial misconduct.
c. In its Formal Complaint filed against [Judge Hartzog], the Commission found that [Judge Hartzog] falsely acknowledged a deed, indicating that the grantor in the deed had personally appeared before him, when in fact the grantor had not done so, and further, that [Judge Hartzog] falsely entered orders in two separate cases purportedly pending in the Justice Court of Jefferson Davis County, Mississippi, when, in fact, no such cases existed. The Supreme Court, in Miss. Comm’n on Judicial Performance v. Johnny C. Hartzog, 646 So.2d 1319 (Miss.1994), adopted the Commission’s recommendation and held that [Judge Hartzog] had violated the Code of Judicial Conduct and Miss. Const. § 177A by committing willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Further the Court approved the Commission’s recommendation that [Judge Hartzog] be publicly reprimanded and assessed with the cost of the proceedings.
d. Commission Inquiry No. 1996-155 involved a recusal issue. In this Inquiry, [Judge Hartzog], in his official capacity as Justice Court Judge, Post 2, Jefferson Davis County, accepted a DUI guilty plea from his daughter. Following Commission investigation, the matter was resolved through informal Commission action and remanded to the files without prejudice. [Judge Hartzog] was advised that in the future, if a member of his family within the third degree of kinship appears before [Judge Hartzog] as a litigant, he should recuse himself, even if the family member is pleading guilty and receiving the standard fine.
e.On February 16, 2000, [Judge Hart-zog], in his capacity as Justice Court Judge, presided over a civil action filed by Betty Ellis against Robert Jones. Prior to any hearing, [Judge Hartzog] called the parties into his office and attempted to negotiate a settlement, which resulted in [Judge Hartzog] informing the parties of what his ruling would be. No evidence and no sworn testimony was received. Based upon the actions of [Judge Hartzog], the parties did settle the matter. Subsequently, a complaint was filed with the Commission by one of the parties to that litigation. On August 9, 2001, the second Formal Complaint against [Judge Hartzog] was filed by the Commission in Inquiry No. 2000-047. The Commission found that the actions of [Judge Hartzog] amounted to forced negotiations under the pretense of a “settlement conference” ending with [Judge Hartzog] informing the parties how the matter should be handled and resolved. [Judge Hartzog] failed to follow rules of procedure, denied the parties their right to be heard in open court, and injected himself into the lawsuit between the parties to the action. In mitigation, the Commission found that the actions of [Judge Hartzog] were based on a sincere attempt to help the parties resolve their differences in as economical and amenable method as possible, and that the actions were not intended to willfully harm or deprive either party of any *1200 State or Constitutional rights. Having considered the matter, the Commission imposed a private reprimand and assessed costs to [Judge Hartzog].
f. On August 29, 2001, [Judge Hartzog] was indicted by the Grand Jury of Lamar County, Mississippi, on one felony count of false pretense and one felony count of attempted false pretense based upon his writing an insufficient funds check and a check written after the account was closed. Accepting the recommendation of the Commission, the Mississippi Supreme Court suspended [Judge Hartzog] from his duties as Justice Court Judge, Post 2, Jefferson Davis County, Mississippi on an interim basis, in Miss. Comm’n on Judicial Performance v. Johnny C. Hartzog, 822 So.2d 941 (Miss.2002). Subsequently, in an opinion rendered on November 18, 2004, in connection with the Commission’s third Formal Complaint filed against [Judge Hartzog], the Supreme Court in Miss. Comm’n on Judicial Performance v. Johnny C. Hartzog, 904 So.2d 981 (Miss.2004), accepted and adopted the joint recommendation of the Commission and [Judge Hartzog], and found that [Judge Hartzog’s] actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office in disrepute. Accordingly, [Judge Hartzog] was issued a public reprimand and a fine of $4,056.30, and assessed costs in the sum of $100.00.
¶ 33. Consistent with his acts of denial in these past cases, Judge Hartzog denies any wrongdoing in today’s case. In fact, notwithstanding overwhelming evidence to the contrary, including the testimony of his own Justice Court Clerk, Judy Cole, Judge Hartzog denies that he was involved in a forced settlement in today’s case by attempting to persuade Carol Oatis to sell the subject property to Veronica Moses.
¶ 34. I have come to the conclusion that some of the actions taken by Judge Hart-zog in today’s case best can be described in one word — bizarre. For instance, after the Formal Complaint was filed in this case on November 11, 2008, Judge Hart-zog, evidently in “response” to the Formal Complaint, wrote a letter, dated January 19, 2009, to the Commission. In this letter, Judge Hartzog stated, inter alia:
On or about June or July 2008 Carol Oatis appeared in Justice Court and informed me that he was an attorney representing a client in a DUI case. I refused to allow Mr. Oatis to represent the young man, because he could not show proof of him being an attorney. Mr. Oatis told me that he went to the Air Force and he was superior over me. I informed him that he still could not represent the person without proof of him being an attorney.
First of all, I am at a total loss as to how Judge Hartzog’s letter in response to the Commission’s Formal Complaint was in any way relevant to the allegations contained in the Formal Complaint. Secondly, it is important to keep in mind that Judge Hartzog and Oatis had known each other for years! In fact, at the hearing before the committee, Judge Hartzog testified:
A. On what Little Brother said that I said?
Q. Wait a minute. Who’s Little Brother?
A. Carol Oatis. That’s what we all call him, Little Brother. Been knowing him.
Later, during the hearing, when Carol Oa-tis was testifying, Judge Hartzog, who was representing himself at the hearing, questioned Oatis:
Q. Okay. We’ll move on. The day that I was fixing to have criminal court and you came in and told me that you was *1201 Attorney Carol Oatis representing a young man that was with you for DUI, and I told you what?
A. Judge, you’re lying. It’s just that simple. I can’t put it no other way. You are lying, Judge. And I would like for you to bring whoever you said this come up, come bring them up. Let me tell — ask them a question. You lying, Judge. Judge, look at me in the eyes. You’re lying.
(Emphasis added).
¶ 35. Additionally, after the committee submitted its Findings of Fact, Conclusions of Law and Recommendation to the Commission, Judge Hartzog mailed a letter, dated June 7, 2009, to Darlene Ballard, Senior Staff Attorney for the Commission, and in this letter, Judge Hartzog stated, inter alia:
I object to the committee’s recommendation to be removed from the office of Justice Court Judge, Jefferson Davis County, post 2.
The ease in question should never should (sic) have been filed in Justice Court, because it was already in Chancery Court and dealt with a house and land. Justice Court had no jurisdiction over the case.
What does this have to do with anything remotely relevant to the complaint lodged against Judge Hartzog before the Commission?
¶ 36. Quite frankly, stated in today’s vernacular, I am of the opinion that Judge Hartzog has issues. Mike Royko, the late syndicated columnist who, over the years, wrote for the Chicago Daily News, the Chicago Sun-Times, and the Chicago Tribune, once wrote an article bemoaning the fact that our society had become a “blameless society.” In other words, it had become commonplace in modern society for many of this nation’s citizens to refuse to accept responsibilities for their actions, to refuse to be held accountable for their actions: “blame someone else for my conduct, but don’t blame me.” Judge Hartzog seems to epitomize this mindset. Throughout his history of defending the numerous claims of judicial misconduct on his part, Judge Hartzog has for the most part denied any wrongdoing.
¶ 37. When I first decided to write separately in this case, my primary reason was to go further than the majority opinion in discussing moral turpitude (Gibson factor number five), because, while the majority opinion correctly discussed moral turpitude, it made no specific finding as to whether moral turpitude was involved in today’s case concerning Judge Hartzog. Before studying the record in this case, I opined that moral turpitude most likely was not involved in this case. However, after studying the record in this case in its entirety, I have changed my mind. “Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Gibson, 883 So.2d at 1158 n. 2. In other words, moral turpitude in the judicial arena is the antithesis of the concepts of good morals, justice, and honesty in dealing with those who come before the court.
■ ¶ 38. I do not believe that the importance of all judges conducting themselves in accordance with the Code of Judicial Conduct can be overemphasized, and it also should be remembered that for most Mississippi citizens, their only contact with the judicial system will be at the grassroots level via justice court. Therefore, these citizens’ perception of our entire state-wide judicial system in Mississippi will be based on their experiences — good or bad — in justice court.
*1202 There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the justice court judge. See In re Gamer, 466 So.2d 884, 887 (Miss.1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process.
Sanford, 941 So.2d at 215 (quoting In re Bailey, 541 So.2d 1036, 1039 (Miss.1989)).
¶ 39. As of March 1, 2010, Judge Hart-zog has been on the bench for twenty-nine years. It can only be hoped that today’s decision will finally right his ship in his service to the citizens of Jefferson Davis County.
WALLER, C.J., DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION. PIERCE, J., JOINS THIS OPINION IN PART.

. I also agree with Justice Pierce’s specially concurring opinion explaining that more is required to mandate recusal than just knowing a party for a long period of time, but instead, the appropriate criteria is the objective test espoused in Jenkins v. State, 570 So.2d 1191, 1192 (Miss.1990). See also Jen *1198 kins v. Forrest County Gen. Hosp., 542 So.2d 1180, 1181 (Miss.1988).